

JOSHUA D. ARISOHN
ARISOHN LLC
94 BLAKESLEE ROAD
LITCHFIELD, CT 06759
TEL: (917) 656-0569
josh@arisohnllc.com

JOSHUA D. ARISOHN
ARISOHN LLC
513 EIGHTH AVENUE, #2
BROOKLYN, NY 11215
TEL: (917) 656-0569
josh@arisohnllc.com

September 19, 2025

**VIA ECF**
Honorable Margo K. Brodie, Chief Judge
U.S. District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

**Re:** *Peters v. Keurig Dr. Pepper Inc.*, **1:25-cv-04410-MKB-PK**

Dear Chief Judge Brodie,

  I write on behalf of Plaintiff Kesha Peters ("Plaintiff") in response to the September 12, 2025 pre-motion letter (ECF No. 8) ("PML") of Defendant Keurig Dr. Peppers Inc. ("Defendant"). Plaintiff alleges that she purchased Snapple beverages in various varieties (the "Products") that were labeled "ALL NATURAL" but that contained synthetic citric acid. Compl. (ECF No. 1) ¶¶ 1-3, 8. Accordingly, she has filed this class action on behalf of herself and similarly situated consumers and has asserted claims under New York General Business Law § 349 for Defendant's deceptive acts and practices, under New York General Business Law § 350 for false advertising, and for breach of express warranty. For the reasons set forth herein, the Court should deny Defendant's contemplated motion to dismiss.

  ***First***, Defendant argues that "Plaintiff has not plausibly alleged that the Products contain the alleged synthetic variety of citric acid." PML at 1. That is incorrect. Plaintiff expressly alleges that "the Products contain synthetic citric acid." Compl. ¶ 3; *id.* ¶ 8 ("the Products that she purchased contained synthetic citric acid"); *id.* ¶ 13 ("the Products contain an ingredient that is not natural: synthetic citric acid"). These allegations alone are sufficient. *Fried v. Snapple Beverage Corp.*, 753 F. Supp. 3d 1145, 1152 (S.D. Cal. 2024) ("Plaintiff alleges again that Defendant's 'Products contain MCA [manufactured citric acid], an industrial chemical.' These are factual allegations that, at this stage, the Court is required to accept.") (internal citation omitted).

  But Plaintiff also provides factual support for her allegation that "[c]itric acid is a synthetic ingredient." Compl. ¶ 14. She notes that "it is not economically feasible" to produce citric acid naturally and that "the USDA Agricultural Marketing Service has noted that natural citric acid is 'no longer commercially available.'" In addition, Plaintiff alleges that the FDA has "determined that citric acid is synthetic and not natural." *Id.* ¶ 17.

> For instance, in an August 16, 2001 Warning Letter sent to Oak Tree Farm Dairy, Inc., the FDA wrote that the label for "OAKTREE ALL NATURAL LEMONADE" was "inappropriate" because "natural" means "nothing artificial or synthetic" and the product contained citric acid. Likewise, in an August 29, 2001

> Warning Letter to the Hirzel Canning Company, the FDA wrote that chopped tomatoes should not be labeled "ALL NATURAL" because they contained citric acid.

*Id.* Based on these factual allegations, Plaintiff plausibly asserts that Defendant used synthetic citric acid in the Products. *See, e.g.*, *Squeo v. Campbell Soup Co.*, 2024 WL 4557680, at *4 (N.D. Cal. Oct. 22, 2024) ("[A]ccepting the alleged facts as true, as the Court must, it is highly likely that the citric acid included in the chips was artificially produced.") (original emphasis); *Ward v. Pepperidge Farm, Inc.*, 773 F. Supp. 3d 10, 20 (S.D.N.Y. 2025) (plaintiff's allegations "about the declining production of natural citric acid and proliferation of manufactured citric acid in food products bolster her allegation that manufactured citric acid is in the Product"); *Hayes v. Kraft Heinz Co.*, 2024 WL 4766319, at *3 (N.D. Ill. Nov. 13, 2024) ("[T]he Court believes that Plaintiffs here have drawn a sufficient connection between the industry practice of using artificial citric acid and Defendants' practices.").

Defendant's authorities are not to the contrary. In *Valencia v. Snapple Beverage Corp.*, 2024 WL 1158476 (S.D.N.Y. Mar. 18, 2024), the plaintiff alleged, "without any corresponding factual basis," that the citric acid in question was artificially produced. *See id.* at *1, *5-6. "Here, however, Plaintiff[] offer[s] support for [her] allegation[] concerning the prevalence of manufactured citric acid in food products." *Squeo*, 2024 WL 4557680, at *4. Likewise, in *Tarzian v. Kraft Heinz Food Co.*, 2019 WL 5064732 (N.D. Ill. Oct. 9, 2019), the plaintiffs alleged merely that "it is more economically viable to produce citric acid for industrial use through [a] fermentation process." *See id.* at *1, *4. Again, here, Plaintiff "offer[s] allegations that, if accepted as true, render it highly likely that the citric acid included in the chips was artificially produced." *Squeo*, 2024 WL 4557680, at *5. *See also Fried*, 753 F. Supp. 3d at 1152 ("The complaints in *Tarzian* and *Valencia* were also more generalized.").

**Second**, Defendant argues that Plaintiff's GBL claims fail because synthetic citric acid is supposedly identical to naturally occurring citric acid. But this factual assertion is the exact opposite of what Plaintiff alleges. As she explains in the Complaint, synthetic citric acid is made using industrial synthetic chemicals, like "n- octyl alcohol, isoparaffinic petroleum hydrocarbons, calcium hydroxide and sulfuric acid," that "remain in synthetic citric acid" and thus in finished foods like the Products. Compl. ¶ 16. In addition, Plaintiff alleges that "[c]onsumption of synthetic citric acid has been associated with adverse health effects including inflammation related to asthma, juvenile idiopathic arthritis, autistic spectrum disorder and fibromyalgia." *Id.* ¶ 18. Accepting these allegations as true, Plaintiff plausibly alleges that synthetic citric acid is meaningfully different from the naturally occurring variety and thus that Defendant's use of synthetic citric acid in the Products would deceive a reasonable consumer. *See, e.g.*, *Hayes*, 2024 WL 4766319, at *3 (holding that the plaintiffs' allegations did "not suffer from the same defect" as those in *Valencia* because they alleged that "unlike natural citric acid," citric acid derived from *Aspergillus niger* "is highly inflammatory" and that "[c]onsumption of manufactured citric acid has been associated with adverse health events like joint pain with swelling and stiffness, muscular and stomach pain, as well as shortness of breath."); *Ward*, 773 F. Supp. 3d at 20 ("Considering industry practices, the production process, and the chemical differences, the Court finds Ward has sufficiently alleged that the citric acid used in the Product is artificial.").

*Finally*, Defendant argues that Plaintiff fails to allege an injury-in-fact sufficient to confer Article III standing. PML at 3. But Plaintiff clearly sets out her injury in the Complaint:

> In purchasing the Products, Ms. Peters relied on Defendant's false, misleading, and deceptive marketing of the Products as "ALL NATURAL." Ms. Peters understood these representations to mean that the Products did not contain any synthetic ingredients, but in fact, the Products that she purchased contained synthetic citric acid. Had Ms. Peters known that Defendant's representations were false and misleading, she would not have purchased the Products or would have only been willing to purchase the Products at a lesser price.

Compl. ¶ 8. This is alleged economic injury, based on a price premium theory, is sufficient. *Langan v. Johnson & Johnson Consumer Cos.*, 897 F.3d 88, 92 (2d Cir. 2018) (plaintiff had standing because she alleged that she paid a premium for baby products represented as "natural"); *Axon v. Florida's Natural Growers, Inc.*, 813 F. App'x 701 (2d Cir. 2020) (where product labeled "natural" contained a non-natural ingredient, the plaintiff "suffered an injury-in-fact because she purchased products bearing allegedly misleading labels and sustained financial injury—paying a premium—as a result.").

Defendant argues that injury-in-fact is nevertheless lacking here because "Plaintiff got precisely what she paid for." PML at 3. That is not true. Plaintiff paid for a product that was supposed to be "ALL NATURAL." But the product that she received was not natural because it contained citric acid that was synthetic. And, as described above, that synthetic citric acid differed from naturally occurring citric acid in important respects, namely its inclusion of synthetic chemicals used in the manufacturing process and the resulting adverse health consequences.

For all of these reasons, the Court should deny Defendant's contemplated motion to dismiss.

Very truly yours,

Josh Arisohn

Joshua D. Arisohn