UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------

KESHA PETERS, *individually and on behalf of all others similarly situated*,

Plaintiff,

v.

KEURIG DR PEPPER INC.,

Defendant.

---------------------------------------------------------------

**MEMORANDUM & ORDER**
25-CV-4410 (MKB)

MARGO K. BRODIE, United States District Judge:

Plaintiff Kesha Peters, individually and on behalf of all others similarly situated, commenced the above-captioned action against Defendant Keurig Dr Pepper Inc. ("Keurig") on August 7, 2025, asserting claims for violations of New York General Business Law ("GBL") §§ 349 and 350 and breach of express warranty arising out of Keurig's manufacturing, advertising, and selling of Snapple beverages in various varieties (the "Product" or "Products"). (Compl. ¶¶ 1, 27–55, Docket Entry No. 1.) Plaintiff alleges that Keurig falsely "represents to consumers through its packing that the Products are 'ALL NATURAL' . . . in order to capitalize on consumers' preference for natural foods that do not contain synthetic ingredients" while the Products contain synthetic citric acid. (*Id.* ¶¶ 2–3.) Plaintiff seeks to represent: (1) a nationwide class of "all persons in the United States who, during the maximum period of time permitted by law, purchased the Products for personal, family, or household consumption, and not for resale," (*id.* ¶ 20); and (2) a New York subclass of "all person[s] in New York who purchased the Products," (*id.* ¶ 21).

On December 15, 2025, Keurig moved to dismiss the Complaint for failure to state a claim pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, and

Plaintiff opposed the motion.[1] For the reasons explained below, the Court grants Keurig's motion.

## I. Background

The Court assumes the truth of the factual allegations in the Complaint for the purpose of deciding Keurig's motion. The Court also considers documents attached to and incorporated by reference in the Complaint.[2]

### a. The Products

Keurig, a Delaware corporation with its principal place of business located in Burlington, Massachusetts, "formulates, advertises, manufactures, and/or sells the Products [in various varieties] throughout New York and the United States." (Compl. ¶¶ 1, 9.) "[Keurig's] labeling on the Products states in large all-capital letters that they are 'ALL NATURAL.'" (*Id.* ¶ 10.) Plaintiff alleges that the Products' packaging is deceptive because "the Products contain an ingredient that is not natural: synthetic citric acid." (*Id.* ¶ 13.)

---

[1] (Def.'s Notice of Mot. to Dismiss ("Def.'s Mot."), Docket Entry No. 17; Def.'s Mem. in Supp. of Def.'s Mot. ("Def.'s Mem."), Docket Entry No. 18; Decl. of Charles C. Sipos, Esq. in Supp. of Def.'s Mot. ("Sipos Decl."), Docket Entry No. 19; Pl.'s Opp'n to Def.'s Mot. ("Pl.'s Opp'n"), Docket Entry No. 21; Def.'s Reply in Supp. of Def.'s Mot. ("Def.'s Reply"), Docket Entry No. 20.) On April 3, 2026, Defendant filed a notice of supplemental authority. (Def.'s Notice of Suppl. Auth., Docket Entry No. 27.) On July 23, 2026, Plaintiff filed a notice of supplemental authority. (Pl.'s Notice of Supp. Auth., Docket Entry No. 28.)

[2] In deciding a Rule 12(b)(6) motion, "the district court is normally required to look only to the allegations on the face of the complaint," but "may consider documents that 'are attached to the complaint,' 'incorporated in it by reference,' 'integral' to the complaint, or the proper subject of judicial notice." *United States v. Strock*, 982 F.3d 51, 63 (2d Cir. 2020) (quoting *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007)); *see United States ex. rel. Henig v. Amazon.com, Inc.*, 177 F.4th 156, 163 (2d Cir. 2026) (same); *Pearson v. Gesner*, 125 F.4th 400, 406 (2d Cir. 2025) (same); *Lynch v. Dep't of Educ. of N.Y.*, 822 F. Supp. 3d 258, 275 (E.D.N.Y. 2026) ("On a motion to dismiss, courts are constrained in their review to the four corners of the complaint, the documents attached thereto, those that are integral to the complaint or incorporated by reference, and those facts or documents of which the court can take judicial notice." (internal quotation marks omitted)).

Synthetic citric acid is a "major industrial chemical" that is "used to add flavor and as a preservative in foods." (*Id.* ¶¶ 14, 15.) Plaintiff contends that synthetic citric acid, "like the kind found in the Products," is manufactured using "synthetic industrial chemicals to render the [citric acid] from mold (*Aspergillus niger*)" which results in "trace synthetic chemicals remain[ing] in the synthetic citric acid" and ultimately "end up in finished foods, including the Products that Plaintiff purchased." (*Id.* ¶ 16.) Plaintiff contends that "[c]onsumption of synthetic citric acid has been associated with adverse health effects including inflammation related to asthma, juvenile idiopathic arthritis, autistic spectrum disorder and fibromyalgia." (*Id.* ¶ 18.)

Plaintiff also alleges that "[a]lthough citric acid can be produced naturally, it is not economically feasible to do so and the [United States Department of Agriculture ('USDA')] Agricultural Marketing Service has noted that natural citric acid is 'no longer commercially available.'" (*Id.* ¶ 14.) Therefore, Plaintiff claims that "only synthetic citric acid is used in packaged foods, including the Products." (*Id.*) Plaintiff further alleges that "the [United States Food and Drug Administration ('FDA')] has determined that citric acid is synthetic and not natural," referencing two warning letters the FDA sent to other companies in 2001 about labeling their products as natural when their products contained citric acid. (*Id.* ¶ 17.)

Plaintiff "purchased the Products for her personal use numerous times," including "in or around July 2025, [when Plaintiff] purchased Snapple peach tea from the C-Town supermarket in East Flatbush, New York for approximately $1.49." (*Id.* ¶ 8.) Plaintiff claims that if she knew that the Products contained synthetic citric acid, "she would have not purchased the Products or would have only been willing to purchase the Products at a lesser price." (*Id.*)

Plaintiff contends that Keurig "has profited enormously" through its alleged "false and misleading representation[] that the Products contain only natural ingredients," and Plaintiff

brings "this action [ ] to require [Keurig] to change its labeling claims and to provide consumers with monetary relief for its deceptive and misleading product claims." (*Id.* ¶ 19.)

**b. Procedural background**

Plaintiff filed the class-action Complaint against Keurig on August 7, 2025. (*See* Compl.) Plaintiff alleges three causes of action against Keurig: (1) violation of GBL § 349 for "engaging in deceptive acts or practices" as "[Keurig] made false and misleading statements by marketing the Products as 'ALL NATURAL' when the Products contain synthetic citric acid," (*id.* ¶¶ 32–33); (2) violation of GBL § 350 for "false advertising" as "[Keurig]'s labeling and advertisement of the Products was false and misleading in a material way," (*id.* ¶¶ 43–44 (alteration omitted)); and (3) breach of express warranty by "falsely representing the Products" as "the Products do not conform to [Keurig]'s representations and warranties [that the Products are 'All-Natural'] because the Products contain synthetic citric acid," (*id.* ¶ 53). Plaintiff brings a class-action Complaint seeking to represent: (1) a nationwide class of "all persons in the United States who, during the maximum period of time permitted by law, purchased the Products for personal, family, or household consumption, and not for resale," (*id.* ¶ 20); and (2) a New York subclass of "all persons in New York who purchased the Products," (*id.* ¶ 21). All three causes of action against Keurig are brought on behalf of the New York subclass, while only the breach of express warranty cause of action is brought on behalf of the nationwide class. (*See id.*)

On December 15, 2025, Keurig moved to dismiss the Complaint for failure to state a claim pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, and Plaintiff opposed the motion. (*See* Def.'s Mot.; Def.'s Mem.; Pl.'s Opp'n; Def.'s Reply.) On April 3, 2026, Keurig filed a letter of supplemental authority, bringing to the Court's attention two recent decisions published after it filed its motion to dismiss that further support the arguments that Keurig advanced in its motion. (*See* Def.'s Notice.) On July 23, 2026, Plaintiff

filed a letter of supplemental authority, bringing to the Court's attention three recent decisions published after she filed her response to the motion to dismiss that further support the arguments that she advanced in her opposition to Keurig's motion.

## II. Discussion

### a. Standards of review

#### i. Rule 12(b)(1)

A district court may dismiss an action for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure when the court "lacks the statutory or constitutional power to adjudicate it." *Xia v. Bondi*, 137 F.4th 85, 89 (2d Cir. 2025) (quoting *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.à.r.l.*, 790 F.3d 411, 416–17 (2d Cir. 2015)); *AMTAX Holdings 227, LLC v. CohnReznick LLP*, 136 F.4th 32, 37 (2d Cir. 2025) (citing *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)); *Citizens United to Protect Our Neighborhoods v. Vill. of Chestnut Ridge*, 98 F.4th 386, 391 (2d Cir. 2024) (quoting *Conn. Parents Union v. Russell-Tucker*, 8 F.4th 167, 172 (2d Cir. 2021)); *Brokamp v. James*, 66 F.4th 374, 386 (2d Cir. 2023) (quoting *Cortlandt St. Recovery Corp.*, 790 F.3d at 416–17); *Green v. Dep't of Educ. of N.Y.*, 16 F.4th 1070, 1075 (2d Cir. 2021) (quoting *Makarova*, 201 F.3d at 113). Courts must "accept the complaint's material allegations as true, and . . . draw all reasonable inferences in the plaintiffs' favor," *Sunvestment Energy Grp. NY 64 LLC v. Nat'l Grid USA Servs. Co.*, 116 F.4th 106, 113 (2d Cir. 2024) (quoting *Raymond Loubier Irrevocable Tr. v. Loubier*, 858 F.3d 719, 725 (2d Cir. 2017)), but "[w]here jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings," *Allco Fin. Ltd. v. Roisman*, No. 22-2726, 2023 WL 4571965, at *1 (2d Cir. July 18, 2023) (summary order) (alteration in original) (quoting *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014)); *Talarico Bros. Bldg. Corp. v.*

*Union Carbide Corp.*, 73 F.4th 126, 136 (2d Cir. 2023) (quoting *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003)). *See Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 441 (2d Cir. 2022) ("It is only where 'jurisdictional facts are placed in dispute' that the court has the 'obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits.'" (first quoting *Tandon*, 752 F.3d at 243; and then citing *LeBlanc v. Cleveland*, 198 F.3d 353, 356 (2d Cir. 1999))); *Iacovo v. Magguilli*, No. 24-CV-4372, 2025 WL 1135471, at *3 (E.D.N.Y. Apr. 17, 2025) ("In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." (alteration in original) (quoting *Tandon*, 752 F.3d at 243)). Ultimately, "the party asserting subject matter jurisdiction 'has the burden of proving by a preponderance of the evidence that it exists.'" *Tandon*, 752 F.3d at 243 (quoting *Makarova*, 201 F.3d at 113); *see AMTAX Holdings*, 136 F.4th at 37 (quoting same); *Martin v. United Bridge Cap., LP*, No. 21-1790, 2022 WL 2166399, at *2 (2d Cir. June 16, 2022) (quoting same).

**ii. Rule 12(b)(6)**

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court "must 'construe [the complaint] liberally, accepting all factual allegations therein as true and drawing all reasonable inferences in the plaintiff[''s] favor.'" *Singh v. Deloitte LLP*, 123 F.4th 88, 93 (2d Cir. 2024) (quoting *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 106–07 (2d Cir. 2021)); *see also Vaughn v. Phoenix House N.Y. Inc.*, 957 F.3d 141, 145 (2d Cir. 2020) ("[The Second Circuit] review[s] *de novo* a district court's dismissal of a complaint pursuant to Rule 12(b)(6), construing the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002))). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 570 (2007); *Yerkyn v. Yakovlevich*, 164 F.4th 224, 231 (2d Cir. 2026) (quoting *id.*); *see also Miller v. McDonald*, 180 F.4th 420, 426 (2d Cir. 2026) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ. of City Sch. Dist. of N.Y.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678); *see Knapp v. Barclays PLC*, 171 F.4th 166, 170 (2d Cir. 2026) (quoting same); *Carruthers v. Colton*, 153 F.4th 169, 179 (2d Cir. 2025) (quoting same); *Roe v. St. John's Univ.*, 91 F.4th 643, 651 (2d Cir. 2024) (quoting *Matson*, 631 F.3d at 63); *see also Salazar v. Nat'l Basketball Ass'n*, 118 F.4th 533, 544 (2d Cir. 2024) ("[T]he plaintiff's allegations must enable the court to reasonably infer that the defendant is liable for the alleged misconduct." (citing *Iqbal*, 556 U.S. at 678)), *cert. denied*, 146 S. Ct. 880 (2025); *Emilee Carpenter, LLC v. James*, 107 F.4th 92, 99 (2d Cir. 2024) ("[S]urviv[ing] a motion to dismiss . . . requires 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" (quoting *Iqbal*, 556 U.S. at 678)). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678; *see Roe*, 91 F.4th at 651 ("Although all factual allegations contained in the complaint are assumed to be true, this rule does not extend 'to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" (quoting *id.*)).

**b. Discussion**

**i. Alleged violations of GBL §§ 349 and 350**

Keurig argues that Plaintiff fails to plausibly allege a claim under GBL §§ 349 and 350 because she has not alleged that: (1) the citric acid in the Product is synthetic; (2) a reasonable

consumer would be misled by the Products' labels; and (3) she suffered a past or future injury due to the alleged material misrepresentation.[3] (Def.'s Mem. 1.)

Plaintiff argues that she has plausibly alleged a claim under GBL §§ 349 and 350 because she alleges that: (1) the Product contains synthetic citric acid; (2) Keurig's "ALL NATURAL" representation would mislead a reasonable consumer; and (3) she was harmed as a result of the material misrepresentation. (Pl.'s Opp'n 1–2.)

GBL § 349 prohibits "deceptive . . . acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. Gen. Bus. Law § 349(a); *Boateng v. BMW of N. Am., LLC*, No. 24-2986, 2025 WL 3134521, at *1 (2d Cir. Nov. 10, 2025) (summary order) (quoting *id.*). GBL § 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. Gen. Bus. Law § 350. "Section 350 of the GBL prohibits '[f]alse advertising in the conduct of any business, trade or commerce,' and is analyzed under the same 'reasonable consumer' standard as Section 349." *Chufen Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 500 (2d Cir. 2020) (alteration in original); *see also Donovan v. GMO-Z.com Trust Co.*, 779 F. Supp. 3d 372, 393 (S.D.N.Y. 2025) ("GBL § 350 prohibits [f]alse advertising in the conduct of any business, trade[,] or commerce, in New York, and claims under § 350 are analyzed under the same reasonable consumer standard as [§] 349." (alterations in original) (internal quotation marks omitted)); *Sheiner v. Supervalu Inc.*, No. 22-CV-10262, 2024 WL 2803030, at *2 (S.D.N.Y. May 28, 2024) ("Section 350 of the GBL . . . is analyzed under the same 'reasonable consumer' standard as

---

[3] The Court addresses Keurig's injury arguments first as standing is a threshold inquiry. *See Axon v. Florida's Nat. Growers, Inc.* (*Axon II*), 813 F. App'x 701, 703–04 (2d Cir. 2020) (analyzing first the plaintiff's pleaded injury for purposes of deciding Article III and GBL statutory standing before turning to the merits); *Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 574–75 (S.D.N.Y. 2021) (same).

[Section] 349."); *Cosgrove v. Or. Chai, Inc.*, 520 F. Supp. 3d 562, 575 (S.D.N.Y. 2021) ("'The standard for recovery under . . . § 350, while specific to false advertising, is otherwise identical to [§] 349,' and therefore the [c]ourt will merge its analysis of the two claims." (quoting *Goshen v. Mut. Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 324 n.1 (2002))).

To assert a claim under either section, "a plaintiff must allege: (1) the act or practice was consumer-oriented; (2) the act or practice was misleading in a material respect; and (3) the plaintiff was injured as a result." *Electra v. 59 Murray Enters., Inc.*, 987 F.3d 233, 258 (2d Cir. 2021) (quoting *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009)); *see Bailey v. N.Y. L. Sch.*, No. 19-3473, 2021 WL 5500078, at *2 (2d Cir. Nov. 24, 2021) (summary order) (quoting *id.*); *see also Yodice v. Tuoro Coll. & Univ. Sys.*, No. 21-2986, 2024 WL 3466546, at *2 (2d Cir. July 19, 2024) (similar); *Fed. Trade Comm'n v. Quincy Bioscience Holding Co., Inc.*, 753 F. App'x 87, 89 (2d Cir. 2019) ("[T]o successfully assert a claim under [either section], a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." (quoting *Koch v. Acker, Merrall & Condit Co.*, 8 N.Y.3d 940, 941(2012))); *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (quoting same); *Plavin v. Grp. Health Inc.*, 35 N.Y.3d 1, 10 (2020) ("We have explained that, to state a claim under sections 349 or 350, 'a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) [the] plaintiff suffered injury as a result of the allegedly deceptive act or practice.'" (quoting *Koch*, 18 N.Y.3d at 941)). GBL §§ 349 and 350 are "'directed at wrongs against the consuming public' and are designed to 'protect people from consumer frauds.'" *Yodice*, 2024 WL 3466546, at *2 (quoting *Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 24–25 (1995)); *see also Bullion Trading LLC v. J.P. Morgan Chase Bank, N.A.*, No. 25-CV-5980, 2026 WL 1786445, at *8

(S.D.N.Y. June 22, 2026) (quoting same); *Watts v. Beiersdorf Inc.*, No. 24-CV-527, 2024 WL 5168765, at *2 (E.D.N.Y. Dec. 19, 2024) (quoting *Yodice*, 2024 WL 3466546, at *2).[4]

Under New York law, a deceptive act is one that is "likely to mislead a reasonable consumer acting reasonably *under the circumstances*." *Bustamante v. KIND, LLC*, 100 F.4th 419, 426 (2d Cir. 2024) (emphasis added); *Orlander*, 802 F.3d at 300 (emphasis added); *Belfiore v. Procter & Gamble Co.*, 311 F.R.D. 29, 53 (E.D.N.Y. 2015) ("Courts view each allegedly misleading statement in light of its context on the product label or advertisement as a whole. The entire mosaic is viewed rather than each tile separately." (internal quotation marks omitted) (first quoting *Delgado v. Ocwen Loan Servicing, LLC*, No. 13-CV-4427, 2014 WL 4773991, at *8 (E.D.N.Y. Sep. 24, 2014); and then quoting *Time Warner Cable, Inc. v. DIRECTV, Inc.*, No. 06-CV-14245, 2007 WL 1138879, at *4 (S.D.N.Y. Apr. 16, 2007))); *Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 288 (S.D.N.Y. 2014) ("[I]n resolving the reasonable consumer inquiry, one must consider the entire context of the label." (alteration in original) (internal quotation marks omitted)); *Ackerman v. Coca-Cola Co.*, No. 09-CV-395, 2010 WL 2925955, at *15 (E.D.N.Y. July 21, 2010) (conducting the reasonable consumer analysis by "[v]iewing each allegedly misleading statement in light of its context on the label and in connection with the

---

[4] "[C]laims under GBL §§ 349 [and] 350 are not subject to the pleading-with-particularity requirements of Rule 9(b) . . . [and] need only meet the bare-bones notice-pleading requirements of Rule 8(a)." *Colpitts*, 527 F. Supp. 3d at 577 (internal quotation marks omitted) (second alteration in original); *see also Kouyate v. Harvard Drug Grp. LLC*, No. 24-CV-6223, 2025 WL 2773159, at *18 n.24 (S.D.N.Y. Sep. 26, 2025) (quoting *id.*); *Washington v. Reynolds Consumer Prods., LLC*, No. 24-CV-2327, 2025 WL 673615, at *2 (S.D.N.Y. Mar. 3, 2025) (quoting *Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005)) (same); *Velez v. Lasko Prods. LLC*, 706 F. Supp. 3d 444, 452 (S.D.N.Y. 2023) (quoting *Pelman ex. rel. Pelman*, 396 F.3d at 511) (same); *see also Leonard v. Abbott Lab'ys, Inc.*, No. 10-CV-4676, 2012 WL 764199, at *19 (E.D.N.Y. Mar. 5, 2012) (considering case law and discerning a categorical rule that GBL § 349 claims, "regardless of whether they 'sound in fraud,' or are premised on specific misrepresentations rather than an 'advertising scheme,' are not subject to the heightened pleading requirement of Rule 9(b)").

marketing of [the product] as a whole"); *see La Rosa v. SPD Swiss Precision Diagnostics GmbH*, No. 24-CV-1575, 2025 WL 841687, at *1 (2d Cir. Mar. 18, 2025) (summary order) ("[I]n order to survive a motion to dismiss, 'a plaintiff must plausibly allege that the deceptive conduct was likely to mislead a reasonable consumer acting reasonably under the circumstances.'" (quoting *Mantikas v. Kellogg Co.*, 910 F.3d 633, 636 (2d Cir. 2018))); *Derbaremdiker v. Applebee's Int'l, Inc.*, No. 12-CV-1058, 2012 WL 4482057, at *6 n.8 (E.D.N.Y. Sep. 26, 2012) ("The standard established by the New York Court of Appeals for determining whether conduct is materially misleading is that of a reasonable consumer, which means defendant's liability under Section 349 does not hinge on what this specific plaintiff did or did not review before entering the [s]weepstakes." (citing *Gaidon v. Guardian Life Ins. Co. of Am.*, 94 N.Y.2d 330, 344 (1999))), *aff'd*, 519 F. App'x 77 (2d Cir. 2013); *see also Hines v. Overstock.com, Inc.*, No. 09-CV-991, 2013 WL 4495667, at *10 (E.D.N.Y. Aug. 19, 2013) (quoting *Gaidon*, 94 N.Y.2d at 344)).

Under GBL §§ 349 and 350, "[a] monetary loss is an actionable injury." *Yang Chen v. Hiko Energy, LLC*, No. 14-CV-1771, 2014 WL 7389011, at *5 (S.D.N.Y. Dec. 29, 2014) (internal quotation marks omitted) (citing *Spagnola*, 574 F.3d at 74). The alleged "deception itself cannot satisfy the injury prong in a GBL §§ 349, 350 or common law fraud claim." *DeCostanzo v. GlaxoSmithKline PLC*, 643 F. Supp. 3d 340, 352 (E.D.N.Y. 2022) (citations omitted); *see Meyer, Suozzi, Eng. & Klein, P.C. v. Higbee*, No. 18-CV-3353, 2020 WL 1140424, at *3 (E.D.N.Y. Mar. 9, 2020) (GBL §§ 349 and 350 "only permits 'actual or pecuniary harm that is separate and apart from the alleged deception itself.'" (quoting *Derbaremdiker*, 2012 WL 4482057, at *7)); *Wright v. Publishers Clearing House, Inc.*, 439 F. Supp. 3d 102, 113 (E.D.N.Y. Feb 13, 2020) ("[T]he complaint must plausibly allege that the plaintiff suffered 'actual or pecuniary harm that is separate and apart from the alleged deception itself.'" (quoting *Derbaremdiker*, 2012 WL 4482057, at *7)); *Servedio v. State Farm Ins. Co.*, 889 F. Supp. 2d

450, 452 (E.D.N.Y. Sep. 6, 2012) ("[A] section 349 claim will not lie where the deceptive act itself was the only injury."), *aff'd*, 531 F. App'x 110 (2d Cir. 2013). "An actual injury claim under Section[s] 349 [and 350] typically requires a plaintiff to 'allege that, on account of a materially misleading practice, she purchased a product and did not receive the full value of her purchase.'" *Izquierdo v. Mondelez Int'l, Inc.*, No. 16-CV-4697, 2016 WL 6459832, at *7 (S.D.N.Y. Oct. 26, 2016) (quoting *Orlander*, 802 F.3d at 302); *see also Orlander*, 802 F.3d at 302 (finding actual injury under both GBL §§ 349 and 350 where the plaintiff "purchased a product and did not receive the full value of her purchase"). This prong may be satisfied through an allegation that a plaintiff overpaid for the product, or, stated differently, "by a claim that a plaintiff paid a premium for a product based on [the] defendants' inaccurate representations." *Ackerman*, 2010 WL 2925955, at *23; *see also Orlander*, 802 F.3d at 302 (explaining that in some cases the price premium theory "show[s] that [the] plaintiffs paid more than they would have for the good but for the deceptive practices of the defendant-sellers").[5]

### 1. Injury

#### A. Plaintiff has plausibly alleged an injury under a price-premium theory to establish statutory standing under GBL

Keurig contends that Plaintiff lacks statutory standing[6] because she cannot prove she has suffered an injury in fact "under either the benefit-of-the bargain theory or the price premium

[5] Keurig does not dispute that their practice was consumer-oriented. (*See generally* Def.'s Mem.; Def.'s Reply.) In addition, as discussed *infra* section II.b.i.1, the Court finds that Plaintiff has plausibly alleged that she has suffered an injury. Therefore, the Court's analysis focuses on whether Keurig engaged in an "act or practice [that] was misleading in a material respect." *Electra v. 59 Murray Enters., Inc.*, 987 F.3d 233, 258 (2d Cir. 2021) (quoting *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009)).

[6] The Court construes Keurig's argument as a challenge to Plaintiff's statutory standing under GBL as its arguments center around price premium theory and cites case law that analyzes injury under GBL. To the extent that Keurig also challenges Plaintiff's standing under Article

theory."[7] (Def.'s Mem. 14.) Keurig asserts that "Plaintiff has not alleged any specific, concrete facts to support economic injury resulting from the challenged conduct," and "[w]ithout any supportive details, Plaintiff's allegations are conclusory." (Def.'s Reply 9–10.) For example, Plaintiff fails to "identify comparative products to support her alleged price premium" or "provide the prices of any purportedly non-misleading alternatives or allege that the Products did not serve their intended purpose." (*Id.* at 10.) Keurig argues that "Plaintiff's subjective disappointment that the Product did not satisfy her personal definition of 'natural' does not amount to a legally cognizable injury." (Def.'s Mem. 14.) Instead, "Plaintiff got precisely what she paid for — a product with naturally derived ingredients," and "[j]ust because Plaintiff does not find (supposed) synthetically produced citric acid as natural, does not mean she overpaid for it." (*Id.* at 15; *see also* Def.'s Reply 10.)

Plaintiff argues she "sustained an economic injury because she paid for a product that was 'ALL NATURAL' but instead received a product that was inherently worth less because it

---

III, the Court finds that because Plaintiff has sufficiently pleaded an injury under GBL, *see infra*, she has also established injury under Article III. *See Axon II*, 813 F. App'x at 703–04 (affirming that the plaintiff established both Article III and GBL statutory standing through the same price premium injury allegations); *Colpitts*, 527 F. Supp. 3d at 576–78 (finding the plaintiff sufficiently pleaded an injury-in-fact under a price premium theory for purposes of both Article III and GBL standing and noting that Article III standing is a lower standard than GBL).

[7] Keurig argues that Plaintiff fails to establish an injury in fact "under either the benefit-of-the bargain theory or the price premium theory." (Def.'s Mem. 14.) However, Keurig's briefing conflates the two theories of standing and discusses both interchangeably. Plaintiff expressly argues that the Complaint sufficiently alleges economic injury "based on a price premium theory." (Pl.'s Opp'n 13.) In addition, Plaintiff's briefing also conflates the two theories. "When a plaintiff alleges an economic injury, he might demonstrate such an injury through a price-premium or benefit-of-the-bargain theory." *Dalewitz v. Procter & Gamble Co.*, No. 22-CV-7323, 2026 WL 74274, at *4 (S.D.N.Y. Jan. 9, 2026); *see also Lurenz v. Coca-Cola Co.*, No. 22-CV-10941, 2025 WL 2773188, at *3 (S.D.N.Y. Sep. 29, 2025) ("To establish an injury for Article III standing, parties might successfully allege an economic injury through a theory of price-premium injury or through the benefit-of-bargain theory."). Since the Court finds that Plaintiff has established statutory standing under a price premium theory, it does not discuss the parties' benefit of the bargain arguments nor conducts an analysis of this theory of GBL injury.

contained a synthetic ingredient." (Pl.'s Opp'n 13; *see also id.* at 14 ("Because [she] paid a premium for an 'ALL NATURAL' product, but received a product that was not 'ALL NATURAL', she . . . sustained a cognizable economic injury.").) Plaintiff contends that "this economic injury, based on a price premium theory, is sufficient." (*Id.* at 13.) In response to Keurig's briefing, Plaintiff argues "[t]he Court should not credit [Keurig]'s argument that Plaintiff's economic harm was based merely on her 'subjective belief,'" but rather that "Plaintiff's preference for products that are 'natural' is not some quirk that is unique to her." (*Id.* at 14.) Instead, Plaintiff alleges "there is a 'growing market for natural products' and '[h]ealth-conscious consumers are willing to pay a price premium for products labeled and advertised as natural,'" which Plaintiff contends Keurig understands and intentionally takes advantage of by labeling the Products as natural despite the presence of synthetic citric acid. (*Id.* (alteration in original) (quoting Compl. ¶ 12).)

In order to establish standing under a price premium theory, "[a] plaintiff's allegation that she purchased products bearing misleading labels and sustained financial injury as a result is sufficient." *Axon v. Citrus World, Inc.* (*Axon I*), 354 F. Supp. 3d 170, 177 (E.D.N.Y. 2018), *aff'd sub nom.*, *Axon v. Florida's Nat. Growers, Inc.* (*Axon II*), 813 F. App'x 701 (2d Cir. 2020); *see also Osdoby v. Handi-Foil Corp.*, No. 22-CV-4199, 2026 WL 388606, at *8 (E.D.N.Y. Feb. 12, 2026) ("A price premium theory of injury is '[o]ne method of demonstrating actual injury in the consumable goods context . . . by showing that the plaintiff paid a "price premium" — that is, as a result of the defendant's deception, the plaintiff paid more for a product than he otherwise would have.'" (quoting *Eidelman v. Sun Prods. Corp.*, No. 21-1046, 2022 WL 1929250, at *1 (2d Cir. June 6, 2022) (summary order))); *In re Nurture Baby Food Litig.*, No. 21-CV-1217, 2025 WL 918927, at *7 (S.D.N.Y. Mar. 26, 2025) (collecting cases); *Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 576–77 (S.D.N.Y. 2021) ("An injury under §§ 349 and 350 [ ]

may be alleged under a price premium theory whereby a plaintiff claims to have paid more for the product than he or she would have if the defendant did not engage in allegedly deceptive practices."); *Segedie v. Hain Celestial Grp., Inc.*, No. 14-CV-5029, 2015 WL 2168374, at *12 (S.D.N.Y. May 7, 2015) ("[The p]laintiffs have also adequately alleged injury by claiming that they paid a price premium that they would not have paid if the products were not labeled 'natural' or 'all natural.'"); *Ackerman*, 2010 WL 2925955, at *23 ("Injury is adequately alleged under GBL §§ 349 or 350 by a claim that a plaintiff paid a premium for a product based on defendants' inaccurate representations.").

In most price premium cases, the alleged misrepresentation conveys to consumers that the product at issue contains a unique, desirable quality. *See Colpitts*, 527 F. Supp. 3d at 577 ("A price premium theory requires a plaintiff to allege[] that a company marketed a product as having a unique quality, that the marketing allowed the company to charge a price premium for the product, and that the plaintiff paid the premium and later learned that the product did not, in fact, have the marketed quality." (internal quotation marks omitted)); *Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337, 350–51 (S.D.N.Y. 2020) (holding a plaintiff will sufficiently allege injury under a price premium theory where "[a] plaintiff alleges that a company marketed a product as having a 'unique quality,' that the marketing allowed the company to charge a price premium for the product, and that the plaintiff paid the premium and later learned that the product did not, in fact, have the marketed quality"); *Irvine v. Kate Spade & Co.*, No. 16-CV-7300, 2017 WL 4326538, at *3 (S.D.N.Y. Sep. 28, 2017) (collecting cases); *Greene v. Gerber Prods. Co.*, 262 F. Supp. 3d 38, 68 (E.D.N.Y. 2017) (finding that the plaintiff sufficiently pled a GBL § 349 injury where plaintiff alleged that she would not have paid the price charged if not for the purported allergy benefits in the infant formula); *Koenig*, 995 F. Supp. 2d at 288–89 (finding a sufficiently-pled GBL § 349 injury where the plaintiff alleged that he would not have

paid the price charged for "fat-free" milk had he known it contained fat); *Ebin v. Kangadis Food Inc.*, No. 13-CV-2311, 2013 WL 6504547, at *4–5 (S.D.N.Y. Dec. 11, 2013) (finding a sufficient-pled GBL § 349 injury where the plaintiffs alleged they would not have paid the price charged if they had known that the product did not contain "100% Pure Olive Oil"). In most cases, "price premium" should be observable through an increased price in comparison to products without the desirable quality. *See Feldman v. Wakefern Food Corp.*, 716 F. Supp. 3d 71, 82–83 (S.D.N.Y. 2024) (finding the plaintiff plausibly alleged an injury where she alleged she paid a premium price compared to similar products representing in a non-misleading way); *Anderson v. Unilever U.S., Inc.*, 607 F. Supp. 3d 441, 455–56 (S.D.N.Y. 2022) (holding the plaintiff plausibly alleged an injury where she claimed that she paid a price premium for a product based on the defendant's misrepresentation about a "material quality," that the product was "microbiome gentle"); *Cooper v. Anheuser-Busch, LLC*, 553 F. Supp. 3d 83, 109–10 (S.D.N.Y. 2021) (finding the plaintiff's allegations that she would have paid less or not purchased the products if not for the defendant's misrepresentation was sufficient to establish injury); *Belcastro v. Burberry Ltd.*, No. 16-CV-1080, 2017 WL 744596, at *5 (S.D.N.Y. Feb. 23, 2017) (requiring "some connection between the deception and the price actually paid by the plaintiff or the intrinsic value of the good" to establish injury); *see also Reyes v. Upfield US Inc.*, 694 F. Supp. 3d 408, 420–22 (S.D.N.Y. 2023) (collecting cases).

In the Complaint, Plaintiff alleges she "purchased the Products for her personal use numerous times during the applicable statute of limitations," and had Plaintiff "known that [Keurig's] representations were false and misleading, she would not have purchased the Products or would have only been willing to purchase the Products at a lesser price." (Compl. ¶ 8.) Further, Plaintiff alleges that Keurig's "[all-]natural claims" are an "effort to capitalize on the growing market for natural products" where "[h]ealth-conscious consumers are willing to pay a

price premium for products labeled and advertised as natural because they believe that such products are safer and/or healthier to consumer." (*Id.* ¶ 12.) These allegations are sufficient to confer standing as Plaintiff has established that she was injured by paying a premium price due to Keurig's alleged misrepresentation of labeling the Products as "All-Natural," a desirable quality. *See Gold v. Eva Nats.*, *Inc.*, 586 F. Supp. 3d 158, 162 (E.D.N.Y. 2022) ("[B]ased solely on the allegations, the putative class members have all suffered a concrete injury because they paid a price premium for a purportedly 'natural' product."); *In re Frito-Lay N. Am., Inc. All Nat. Litig.*, No. 12-MD-2413, 2013 WL 4647512, at *11 (E.D.N.Y. Aug. 29, 2013) (finding that the plaintiffs who purchased the defendant's products "were injured as a result of those purchases because they paid higher prices than they would have otherwise paid, or not paid at all, for a product that they contend is not, in fact, all natural"); *Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 542 (S.D.N.Y. 2013) ("There is no question plaintiffs have standing to assert claims relating to the product they *did* purchase.").

Keurig argues that Plaintiff has failed to offer factual support for her injury, such as identifying the prices of comparative products or providing the prices of non-misleading alternatives, but Keurig fails to include any case law that supports this as a requirement to an otherwise lenient pleading threshold at the motion to dismiss stage. (*See* Def.'s Reply 10.) *See Baur v. Veneman*, 352 F.3d 625, 636–37 (2d Cir. 2003) (explaining that "the standard for reviewing standing at the pleading stage is lenient"); *see also Axon II*, 813 F. App'x at 703–04 (explaining that the price-premium theory of injury has been broadly accepted in the Second Circuit). In fact, Keurig's argument goes against established law in the Second Circuit. *See Axon II*, 813 F. App'x at 704 ("Axon's failure to identify the prices of competing products to establish the premium that she paid is not fatal to [her] claim at this stage of the proceedings." (internal quotation marks omitted) (alteration in original)); *Washington v. Reynolds Consumer*

*Prods.*, LLC, No. 24-CV-2327, 2025 WL 673615, at * (S.D.N.Y. Mar. 3, 2025) ("The position that [the p]laintiff 'must identify a precisely comparable product in order to allege a GBL section 349 or 350 claim under a price premium theory . . . contradicts the weight of the law in this Circuit." (second alteration in original) (quoting *Greene*, 262 F. Supp. 3d at 69)); *Davis v. Angelcare USA, LLC*, 727 F. Supp. 3d 99, 138 (D. Conn. 2024) (quoting same when applying New York law to GBL claims); *see also Colpitts*, 527 F. Supp. 3d at 578 (collecting cases). Therefore, assuming that Plaintiff can plausibly plead a material misrepresentation that would mislead a reasonable consumer, as discussed *infra* section II.b.2, the Court finds that Plaintiff has established that she suffered an injury under a price premium theory.

**B. Plaintiff has not plausibly alleged a future injury to seek injunctive relief**

Keurig argues that Plaintiff lacks standing to seek injunctive relief. (Def.'s Mem. 15–17.) In support, Keurig contends that Plaintiff does not properly allege a future injury as "Plaintiff is now aware that the Products do not meet her definition of "All Natural" as evidenced by her filing this lawsuit." (*Id.* at 16.) Moreover, Keurig argues that she does not allege that she will buy the Products again nor that she has "any ongoing relationship with [Keurig] that would subject her to the possibility of future harm." (*Id.*.) Keurig contends that "Plaintiff does not rebut [Keurig]'s argument that she lacks standing to seek injunctive relief, thereby conceding this point." (Def.'s Reply 9.)

Plaintiff's briefing is silent on the issue of injunctive relief and whether she has established standing to seek injunctive relief. (*See generally* Pl.'s Opp'n.)

The Second Circuit has explained that "past purchasers of a consumer product who claim to be deceived by that product's packaging . . . have, at most, alleged a past harm." *Berni v. Barilla S.p.A.*, 964 F.3d 141, 147 (2d Cir. 2020). Accordingly, "past purchasers of a product . . . are not likely to encounter future harm of the kind that makes injunctive relief appropriate." *Id.*;

*cf. Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 465–66 (S.D.N.Y. 2020) (noting that because the plaintiffs in a false advertisement case have necessarily become aware of the alleged misrepresentations, "there is no danger that they will again be deceived by them" (quoting *Elkind v. Revlon Consumer Prods. Corp.*, No. 14-CV-2484, 2015 WL 2344134, at *3 (E.D.N.Y. May 14, 2015))).

Plaintiff does not dispute that she lacks standing to sue for injunctive relief and therefore, the Court dismisses her request "[f]or an order enjoining [Keurig] from continuing the illegal practices . . . and compelling [Keurig] to undertake a corrective advertising campaign," (Compl. 11). (*See generally* Pl.'s Opp'n; *see also* Def.'s Reply 9.) *See Doherty v. Bice*, No. 18-CV-10898, 2020 WL 5548790, at *10 (S.D.N.Y. Sep. 16, 2020) (dismissing the plaintiff's claim for injunctive relief where "[the p]laintiff ha[d] not contested this challenge in his briefing"); *see also Jackson v. Fed. Express*, 766 F.3d 189, 198 (2d Cir. 2014) ("[I]n the case of a counseled party, a court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned."); *Curry Mgmt. Corp. v. JPMorgan Chase Bank, N.A.*, 643 F. Supp. 3d 421, 426 (S.D.N.Y. 2022) ("A party may be deemed to concede an argument by failing to address it in an opposition brief.").

Moreover, the Court notes that the Complaint fails to allege that Plaintiff faces a real or immediate threat of future injury and instead relies solely on alleged past injury. *See Grossman v. Simply Nourish Pet Food Co.*, 516 F. Supp. 3d 261, 274–75 (E.D.N.Y. 2021) ("Because [the] plaintiff knows that the [consumer products] are allegedly [deceptively labeled] and that she will not purchase the [p]roducts in their current state, she cannot show an imminent risk of future deception and injury."). Any potential "future injury is merely conjectural or hypothetical" because even if Plaintiff purchased the Product again, she would do so "with exactly the level of information" that she possessed from the outset of this suit, and accordingly would not be

deceived or harmed. *Berni*, 964 F.3d at 147 ("[P]ast purchasers of a consumer product who claim to be deceived by that product's packaging . . . have, at most, alleged a past harm."); *see Patane v. Nestle Waters N. Am., Inc.*, 761 F. Supp. 3d 424, 457 (D. Conn. 2024) (holding the plaintiffs lacked standing to bring injunctive relief claims because they were in "no real danger of injury[] because they now know the alleged 'truth' about [the product]," and therefore, "[r]ather than purchasing the product and paying the price premium, they can buy a different bottled beverage"), *reconsideration denied*, 786 F. Supp. 3d 474 (D. Conn. 2025); *Grossman*, 516 F. Supp. 3d at 274–76 (rejecting the plaintiff's contention that inability to rely on a product's label and advertising constitutes imminent and future injury and finding that the plaintiff lacked standing to seek injunctive relief where the plaintiff alleged that products were deceptively labeled as "natural" and that if the defendants either change the labeling or ingredients she would purchase the products again); *Valcarcel v. Ahold U.S.A., Inc.*, 577 F. Supp. 3d 268, 283 (S.D.N.Y. 2021) (finding that the plaintiff, who alleged that "she is unable to rely on the accuracy of the product's front label in the future, which causes her to avoid purchasing the product, even though she would otherwise like to do so," lacked standing to seek injunctive relief under *Berni*); *see also Barreto v. Westbrae Nat., Inc.*, 518 F. Supp. 3d 795, 809 (S.D.N.Y. 2021) (collecting cases and rejecting the plaintiff's argument that she would purchase that product if she "could trust the label"); *Ashour v. Ariz. Beverages USA LLC*, No. 19-CV-7081, 2020 WL 5603382, at *4 (S.D.N.Y. Sep. 18, 2020) (finding no standing for injunctive relief where the plaintiff alleged that he would purchase the products if he "could rely upon the truthfulness of [the d]efendants' labeling").

Accordingly, because Plaintiff lacks standing to seek injunctive relief having failed to plead future harm, the Court dismisses Plaintiff's request for injunctive relief.

**2. Materially misleading conduct**

**A. Plaintiff has not plausibly alleged a material representation that the citric acid in the Products is synthetic**

Keurig argues first, that Plaintiff's "assertion [that the Products contain synthetic citric acid] is nothing more than speculation" because "Plaintiff has not tested the Products to confirm the presence of the supposedly 'synthetic' citric acid, nor does she allege any facts regarding the Products' manufacturing process, the source of the Products' citric acid, or any other product-specific information that would establish a basis for her claim." (Def.'s Mem. 4–5.) Second, Keurig contends that Plaintiff's sole reliance on generalized statements and the broad economic feasibility of using natural citric acid to allege that Keurig's Products contain the synthetic variety "falls short of the factual specificity required to survive a motion to dismiss." (*Id*. at 5 (citing Compl. ¶ 14); *see also* Def.'s Reply 2–3.) Third, Keurig argues that "courts in this district and nationwide have routinely dismissed similar complaints that rest on general allegations that an ingredient can be manufactured through synthetic processes but fail to plausibly allege that the defendant's product actually uses that variety of ingredient." (Def.'s Mem. 5.) Keurig contends that "Plaintiff's allegations here are worse" because "[i]nstead of relying on vague laboratory testing, she relies only [on] speculation." (*Id.* at 6; *see also* Def.'s Reply 5.) Further, Keurig argues that "a New York federal court dismissed a virtually identical challenge to the same Snapple juice products, holding that 'a generalized statement about the production of citric acid is not enough to adequately allege the citric acid used in the Products is industrially produced.'" (Def.'s Mem. 6 (quoting *Valencia v. Snapple Beverage Corp.*, No. 23-CV-1399, 2024 WL 1158476, at *5 (S.D.N.Y. Mar. 18, 2024).) Fourth, Keurig contends that "Plaintiff offers no factual evidence beyond two decades-old FDA warning letters about unrelated products and a single paragraph in the Complaint speculating about the commercial availability of natural

citric acid," and that these sources "do not provide a plausible factual basis sufficient to support Plaintiff's claims." (Def.'s Reply 5.) Keurig asserts that the FDA letters and the USDA findings that Plaintiff argues support her claims are inaccurate because "the regulatory background . . . clearly acknowledge[s] that citric acid can be natural and non-synthetic." (*Id.* at 4.) Lastly, Keurig argues that the "'mere possibility' that the citric acid in these [P]roducts is synthetic is not enough to state a plausible claim." (Def.'s Mem. 7 (citing *Iqbal*, 556 U.S. at 679).)

Plaintiff argues, first, that the express allegation in the Complaint that the "[P]roducts contain synthetic citric acid" is sufficient to state a plausible claim. (Pl.'s Opp'n 5.) Plaintiff contends that these allegations are not conclusory because she supports her argument by asserting that "it is not economically feasible to produce citric acid naturally and that the USDA Agricultural Marketing Service has noted that as a result, natural citric acid is no longer commercially available." (*Id.* (internal quotation marks omitted) (citing Compl. ¶ 14).) Second, Plaintiff refers to several FDA warning letters and argues that the Complaint "alleges that the FDA has 'determined that citric acid is synthetic and not natural,'" (*id.* at 5 (quoting Compl. ¶ 17)), and "that all packaged foods with citric acid, including the Products, use a synthetic version of the chemical," (*id.* at 8). Third, Plaintiff contends that "[c]ourts considering identical allegations have held that they provide a sufficient basis to allege that citric acid in a product is synthetic." (*Id.* at 6 (citing *Taylor v. Walmart, Inc.*, 789 F. Supp. 3d 774, 785 (C.D. Cal. 2025); *Ringer v. J.M. Smucker Co.*, 783 F. Supp. 3d 1229, 1239 (C.D. Cal. 2025); *Ward v. Pepperidge Farm, Inc.*, 773 F. Supp. 3d 10, 20 (S.D.N.Y. 2025); *Carbine v. Target Corp.*, No. 24-CV-3721, 2025 WL 501829, at *3–4 (C.D. Cal. Feb. 13, 2025); *Hayes v. Kraft Heinz Co.*, No. 23-CV-16596, 2024 WL 4766319, at *3 (N.D. Ill. Nov. 13, 2024); *Squeo v. Campbell Soup Co.*, No. 24-CV-2235, 2024 WL 4557680, at *4 (N.D. Cal. Oct. 22, 2024).) Plaintiff challenges Keurig's cited case law and argues that each is distinguishable because, unlike the plaintiffs in those cases

who "provided no basis whatsoever for their claim that chemicals in the products were synthetic," Plaintiff offers more support for her claims. (*Id.* at 7–8 (citing Def.'s Mem.).)

To survive a motion to dismiss, a plaintiff must allege a sufficient factual basis to plausibly establish that the defendant's products contain a synthetic version of an ingredient and ultimately, a material misrepresentation. *See Valencia*, 2024 WL 1158476, at *5 (holding that "[the p]laintiff's bare claim [ ] that citric acid today is made from mold rather than citrus fruit cannot, absent any allegation specific to the [p]roducts and absent any basis for her assertion about all citric acid, be sufficient"); *Hawkins v. Coca-Cola Co.*, 654 F. Supp. 3d 290, 305 (S.D.N.Y. 2023) (holding that the plaintiff's "bare, unsubstantiated allegations about the *possibility* that the [p]roduct contains [an artificial substance], without any additional factual support from product testing[,]" was insufficient to plausibly allege that the defendant's product contained the artificial substance). A plaintiff's "generalized statement about [the production of citric acid] is not enough to adequately allege the citric acid *used in the [p]roduct* is industrially produced and not derived from fruit." *Indiviglio v. B&G Foods, Inc.*, No. 22-CV-9545, 2023 WL 9022866, at *4 (S.D.N.Y. Dec. 29, 2023); *see also Wynn v. Topco Assocs., LLC*, No. 19-CV-11104, 2021 WL 168541 at *6 (S.D.N.Y. Jan. 19, 2021) ("Absent any *factually substantiated* allegations that the [ingredients] in [d]efendants' product are not derived from natural sources, the [c]ourt finds that [p]laintiffs have failed to allege the presence of artificial flavors . . . ." (emphasis added)). "To satisfy the pleading standards, plaintiff must draw a connection between the common industry practice and the actual practice used by defendant." *Valencia*, 2024 WL 1158476, at *5 (quoting *Indiviglio*, 2023 WL 9022866, at *4); *see Tarzian v. Kraft Heinz Foods Co.*, No. 18-CV-7148, 2019 WL 5064732, at *4 (N.D. Ill. Oct. 9, 2019) (applying New York law and holding the same); *see also Karabas v. TC Heartland LLC*, 770 F. Supp. 3d 454, 467 (E.D.N.Y. 2025) ("The plaintiff's 'generalized' discussion about the manufacturing process is

not sufficient to show that the defendant's product is synthetic."), *appeal withdrawn*, No. 25-942, 2025 WL 1993635 (2d Cir. May 2, 2025).

When determining whether a plaintiff has drawn a connection between common industry practice and the actual practice used by the defendant in their products, courts find that FDA guidance alone is not dispositive. *See Barreto*, 518 F. Supp. 3d at 805–06 (dismissing the plaintiff's claims because an FDA regulation that listed the ingredient as a synthetic flavor did not conclusively establish that the ingredient itself in the defendant's product was also synthetic); *see also Van Wagner v. Wellness Pet Co.*, No. 24-CV-8946, 2026 WL 621830, at *6 (S.D.N.Y. Mar. 5, 2026) (holding that the FDA's inclusion of an ingredient in a list of "[s]ynthetics allowed" in food labeled organic did not persuade the court that the ingredient itself was synthetic (alteration in original)); *Goetz v. Ainsworth Pet Nutrition, LLC*, 768 F. Supp. 3d 645, 656 (S.D.N.Y. 2025) ("[The d]efendants argue that FDA definitions of 'synthetic' are not binding, and the [c]ourt agrees." (internal citations omitted)). Further, even where a plaintiff has alleged that a laboratory analysis shows that the product at issue contains the artificial version of an ingredient, courts have found the allegation to be a "far cry from raising 'any factually substantiated allegations.'" *Hawkins*, 654 F. Supp. 3d at 306 (S.D.N.Y. 2023) (citing *Wynn*, 2021 WL 168541 at *6); *see also Santiful v. Wegmans Food Markets, Inc.* (*Santiful II*), No. 20-CV-2933, 2023 WL 2457801, at *4 (S.D.N.Y. Mar. 10, 2023) (holding that the plaintiff's "results of a laboratory analysis, which were interpreted solely by their attorneys, with no support from, or even identification of, the researcher who conducted the analysis, or of any other expert" to substantiate their allegations was insufficient); *Myers v. Wakefern Food Corp.*, No. 20-CV-8470, 2022 WL 603000, at *4 (S.D.N.Y. Mar. 1, 2022) (holding that the "[p]laintiff has failed to sufficiently allege that [the d]efendant misrepresented that its [p]roduct contains no artificial flavors" because the "[p]laintiff fail[ed] to substantiate how exactly the two alleged

findings from the purported lab test help her arrive at the conclusion that the [p]roduct is made of artificial flavors").

**(1) Plaintiff fails to substantiate her claim that the Products contained synthetic citric acid**

Plaintiff fails to include in the Complaint any "factually substantiated allegations" to plausibly allege that the Products contain synthetic citric acid or that Keurig used a manufacturing process that introduced synthetic materials. Plaintiff's generalized statement that producing natural citric acid is "not economically feasible" is insufficient because she does not plead facts to demonstrate a link between Keurig's Products and the manufacturing process as compared to the broader industry's use of synthetic citric acid. (Compl. ¶¶ 13–14.) *See Goetz*, 768 F. Supp. 3d at 656 n.3 (finding the plaintiffs' allegation that the defendants used synthetic citric acid because "like [m]ore than 90 percent of commercially produced citric acid" today, the citric acid contained in the [p]roducts is manufactured through a processed derivative of black mold" was insufficient because "[c]ourts have previously rejected this kind of guilt-by-association reasoning" (internal quotation marks omitted)); *Indiviglio*, 2023 WL 9022866, at *4 ("This generalized statement about 'industry' is not enough to adequately allege the citric acid used in the [p]roduct is industrially produced and not derived from fruit." (emphasis omitted)); *Tarzian*, 2019 WL 5064732, at *4 ("Because [p]laintiffs' allegations do not link the allegedly artificial citric acid to the actual citric acid used by [the defendant], [p]laintiffs have failed to allege sufficient facts showing that [the defendant's] 'no artificial preservatives' statement was false.")

Plaintiff is required to "draw a connection between common industry practice and the actual practice used by the [D]efendant" to survive dismissal — simply alleging that use of a manufacturing process is "not economically feasible" without any factually substantiated allegations that Keurig's processes align with the broader industry practice or Keurig uses other

synthetic forms of ingredients does not plausibly establish this required connection.[8] (*See* Compl. ¶¶ 13–14.) *Tarzian*, 2019 WL 5064732, at *4 (holding that the plaintiffs' allegations that detailed "the practices commonly used to manufacture citric acid throughout the industry" and the conclusion that the citric acid the defendant used in its products was also synthetic was "too great of an inferential leap" to plausibly state a claim); *see also Indiviglio*, 2023 WL 9022866, at *4 (holding that the plaintiff had not "adequately allege[d] the citric acid used in the [p]roduct [was] industrially produced and not derived from fruit" because "[the] plaintiff offer[ed] no supporting factual allegations about the source or preparation of citric acid as an ingredient in the product at issue" and only made "generalized statement[s] about 'industry'"); *cf. Goetz*, 768 F. Supp. 3d at 656 n.3 (finding that while the plaintiffs failed to make a connection between the

[8] The cases in Plaintiff's supplemental authority are out of circuit cases applying California law and are distinguishable because plaintiffs in those cases also provided more "factually substantiated" allegations for their claims. (*See Jones v. Reed's, Inc.*, No. 25-CV-7102, 2026 WL 622724, at *10–11 (N.D. Cal. Mar. 5, 2026), annexed to Pl.'s Not. of Supp. Auth. as Ex. A, Docket Entry No. 28-1 (rejecting the defendant's arguments that the claims should be dismissed on the pleadings because "it appear[ed] highly likely that the malic acid used in the [p]roducts [was] synthetic" and the defendant "cite[d] no binding or persuasive authority to the contrary"); *Cortez v. Post Consumer Brands, LLC*, No. 25-CV-2321, 2026 WL 657631, at *7 (E.D. Cal. Mar. 9, 2026), annexed to Pl.'s Not. of Supp. Auth. as Ex. B, Docket Entry No. 28-2 ("[G]iven that [the p]laintiff has provided an adequate factual basis for her deception claims under [California state law], the [c]ourt need not reach [the d]efendant's remaining arguments that [the p]laintiff fails to address obvious alternative explanations for the type of citric acid used in the products [the d]efendant sells."); *Borowsky v. Tree Top, Inc.*, No. 25-CV-5533, 2026 WL 719695, at *1 (N.D. Cal. Mar. 16, 2026), annexed to Pl.'s Not. of Supp. Auth. as Ex. C, Docket Entry No. 28-3 (holding that "it [was] reasonable to infer that the ascorbic acid added to the challenged products is not made [naturally]" in part because "[the defendant's] 2023 Quality Compliance Summary, self-descriptively intended 'to address the most frequently asked questions and provide relevant information to our valued customers,' explains that ascorbic acid is 'derived from a multi-step process that typically begins with corn'").) Plaintiff simply alleges that it is not "economically feasible" to manufacture products with natural citric acid. (*See* Compl. ¶ 14.) In addition, Keurig provides far more legal support for its argument that Plaintiff has not plausibly alleged the citric acid in the Products is synthetic than did the defendants in the cases cited by Plaintiff as Keurig relied on substantial case law from the Second Circuit. (*See generally* Def.'s Mem; Def.'s Reply.) The Court therefore finds unpersuasive the cases provided by Plaintiff in her letter providing supplemental authority.

defendants' manufacturing process of citric acid and the general broader industry practice, the plaintiffs' allegations that the defendants used other definitionally synthetic ingredients was sufficient to withstand dismissal). Plaintiff cannot "cure this pleading deficiency by merely pointing to common macroeconomic or manufacturing trends," like the economic feasibility and commercial availability of natural citric acid. (*See* Compl. ¶ 14.) *Fogelson v. Snapple Beverage Corp.*, No. 25-CV-33, 2026 WL 2149968, at *3 (E.D.N.Y. Mar. 27, 2026) ("Furthermore, plaintiffs cannot cure this pleading deficiency by merely pointing to a common macroeconomic or manufacturing trends — such as the widespread commercial use of cheaper, synthetic alternatives — without a direct 'connection between the common industry practice and the actual practice used by the defendant.'" (quoting *Valencia*, 2024 WL 1158476 at *5)). (*See Fogelson v. Snapple Beverage Corp.* 6, annexed to Def.'s Not. of Supp. Auth. as Ex. A, Docket Entry No. 27-1.)

While Plaintiff acknowledges in the Complaint that citric acid can be "produced naturally," (Compl. ¶ 14), the Complaint does not include any factually substantiated allegations to sufficiently allege that the citric acid in Keurig's Products is artificially derived, (*see generally id.*). *See Wynn*, 2021 WL 168541, at *5 (holding that the plaintiff did not plausibly allege that the defendants' products contained artificial flavoring because "[t]he complaint itself acknowledges that the [ingredient] can be 'naturally produced'," yet "the complaint itself does not include specific allegations that the added [ingredients] in [d]efendant's products are artificially derived"); *Tarzian*, 2019 WL 5064732, at *4 (dismissing plaintiff's GBL claims and finding that "[the p]laintiffs' allegations which detail the practices commonly used to manufacture citric acid throughout the industry before concluding [that the citric acid the defendant's used in their products must also be artificial]" fail because they "do not link the allegedly artificial citric acid to the actual citric acid used by [the defendant]"). Instead, the

Complaint includes only conclusory allegations that Keurig's Products use synthetic citric acid, (*see* Compl. ¶¶ 13, 14), which the Court finds insufficient. *See Karabas,* 770 F. Supp. 3d at 467 ("[T]he [c]omplaint's allegations that the [p]roduct contains [synthetic ingredients] are conclusory statements that the [c]ourt is not required to accept." (first and fourth alterations in original) (quoting *Hawkins*, 654 F. Supp. 3d at 306)); *see also Valencia*, 2024 WL 1158476, at *5 ("The [c]omplaint's allegations that the [p]roduct contains artificial citric acid are conclusory statements that the [c]ourt is not required to accept.").

Based on case law from the Second Circuit, the Court finds that Plaintiff's allegations in the Complaint do not plausibly allege that the citric acid in the Products is synthetic and therefore are insufficient to withstand dismissal. *See Fogelson*, 2026 WL 2149968, at *3 ("Where a flavoring compound can be derived from either natural or synthetic sources, [c]ourts in this circuit routinely dismiss complaints that rely on 'conclusory statements as to the ingredients of the [p]roduct.'"); *see also Ward*, 773 F. Supp. 3d at 20 ("Where an ingredient can be found in both natural and artificial forms, a plaintiff must plausibly allege that the artificial version is present in the product." (citing *Hawkins*, 654 F. Supp. 3d at 306)).

**(2) Lack of scientific testing on the Products**

Plaintiff also fails to provide any scientific support or testing analysis connecting her generalized assertion that the industry uses synthetic citric acid to the conclusion that Keurig's Products contain synthetic citric acid. Plaintiff's only support for her conclusion is a general statement about the widely used manufacturing process of synthetic citric acid across the industry — she does not point to any laboratory tests or scholarly articles about the Products that would specifically support the claim that Keurig uses synthetic citric acid and not natural citric acid in its Products. (*See* Compl. ¶ 16.) Such conclusory allegations without factual substantiation are insufficient; more support is needed. *See Hawkins*, 654 F. Supp. 3d at 305

(holding that "[the p]laintiff plainly makes bare, unsubstantiated allegations about the possibility that the Product contains artificial DL-Malic acid, without any additional factual support from product testing"); *Myers*, 2022 WL 603000, at *4 (holding that the "[p]laintiff has failed to sufficiently allege that [the d]efendant misrepresented that its [p]roduct contains no artificial flavors . . . [because] . . . she fail[ed] to provide any details whatsoever about [what the] laboratory test entailed" such as "describ[ing] the testing methodology followed, the specific date, time, or place of the testing, who conducted the testing, the qualifications of the testers, etc."); *Santiful v. Wegmans Food Markets, Inc.* (*Santiful I*), No. 20-CV-2933, 2022 WL 268955, at *4 (S.D.N.Y. Jan. 28, 2022) (holding that the "[p]laintiffs have failed to plausibly allege the ingredient list fails to disclose 'artificial flavors' . . . [because the p]laintiffs allege that the [p]roduct is made of artificial flavors based on their proffered lab analysis[, yet t]his lab analysis contains no information as to the testing methodology, the date, time, or place of the testing, who conducted the testing, and what the exact product tested was[,]" and therefore was insufficient).

Moreover, courts in this Circuit have found that plaintiffs who provide scientific evidence to substantiate their claims cannot withstand dismissal where the plaintiff fails to establish a connection between the provided testing and the disputed product. *See Valencia*, 2024 WL 1158476, at *5 (concluding that "[i]f plaintiffs who actually tested the product did not provide sufficient factual content to render it plausible that the product contained artificially derived compounds, [p]laintiff's bare claim here that citric acid today is made from mold rather than citrus fruit cannot, absent any allegation specific to the [p]roducts and absent any basis for her assertion about all citric acid, be sufficient"); *Myers*, 2022 WL 603000, at *4 (holding that the plaintiff had "failed to sufficiently allege that [the d]efendant misrepresented that its [p]roduct contain[ed] no artificial flavors," even though the plaintiff subjected the defendant's product to laboratory testing that indicated an artificial ingredient may be present). Therefore, because

Plaintiff does not even provide scientific testing, Plaintiff has not stated a plausible claim based solely on generalized allegations regarding the industry's production of citric acid and its economic feasibility. Plaintiff's allegations are no more than conclusory statements that are insufficient to survive a motion to dismiss. *See Fogelson*, 2026 WL 2149968, at *4 ("Because [the p]laintiff merely theorizes the presence of [citric acid] without offering a single concrete, substantiated fact, the complaint's assertions of artificiality amount to pure speculation.").

**(3) FDA guidance**

In addition, the FDA guidance that Plaintiff relies on in the Complaint is not determinative nor does the guidance specifically address whether the citric acid used in the Products is synthetic. (*See* Compl. ¶ 17.) *See Goetz*, 768 F. Supp. 3d at 656 ("Defendants argue that FDA definitions of 'synthetic' are not binding . . . and the [c]ourt agrees."). First, Plaintiff relies on two warning letters from the FDA in an attempt to bolster her claim, (Compl. ¶ 17), however, "FDA warning letters do not constitute agency decisionmaking or enforcement actions." *Jordan v. CVS Pharmacy, Inc.*, No. 23-CV-979, 2024 WL 3258317, at *1 n.3 (W.D.N.Y. May 8, 2024) (citing *Holistic Candlers and Consumers Ass'n v. Food and Drug Admin.*, 664 F.3d 940, 944 (D.C. Cir. 2012)). Second, even if the FDA guidance was sufficient, Plaintiff does not draw an adequate connection between the FDA guidance and the Products or Keurig. (*See* Compl. ¶ 17; Pl.'s Opp'n 5–6.) The two FDA warning letters are about two unrelated products, lemonade and chopped tomatoes, and were sent to two unrelated companies. (*See* Pl.'s Opp'n 5–6.) The warning letters only support that citric acid can be produced synthetically. (*See id.*) However, as Keurig argues, FDA and USDA regulations acknowledge that citric acid can be produced both naturally and synthetically. (Def.'s Reply 4.) *See* 21 C.F.R. § 184.1033 ("It is a naturally occurring constituent of plant and animal tissues . . . . Citric acid may be produced by recovery from sources such as lemon or pineapple juice . . . ."); 7 C.F.R. §

205.605 (a)(1) (USDA regulations indicate that citric acid produced by microbial fermentation of carbohydrate substances is a "nonsynthetic" substance). Without any further allegations that the citric acid used in Keurig's Products is synthetic, Plaintiff's conclusory claims do not withstand dismissal. *See Van Wagner*, 2026 WL 621830 at *6 (holding that the plaintiff's "[g]eneralized and conclusory allegations about [citric acid's] artificial nature [were] insufficient to survive a motion to dismiss" (first alteration in original)).

**(4) Second Circuit case law regarding citric acid**

Cases from within this Circuit support the Court's conclusion that Plaintiff's allegations in the Complaint are conclusory and therefore insufficient when faced with identical facts involving citric acid. *See Valencia*, 2024 WL 1158476, at *5 (holding that the plaintiff did not plausibly establish that there was citric acid in the defendant's products because the plaintiff did not support her claims with scientific testing that indicated the product contained the synthetic version of citric acid); *Indiviglio*, 2023 WL 9022866, at *4 (holding that the plaintiff's "generalized statement about 'industry' is not enough to adequately allege the citric acid used in the [p]roduct is industrially produced and not derived from fruit" (emphasis omitted)); *cf. Cobovic v. Mars Petcare US, Inc.*, 793 F. Supp. 3d 438, 446 (E.D.N.Y. 2025) (denying the defendant's motion to dismiss because "there [was] no dispute about whether the [p]roduct actually contain[ed] synthetic ingredients"); *Ward*, 773 F. Supp. 3d at 20 (holding that the plaintiff had sufficiently alleged that the citric acid in the product was artificial where the plaintiff cited articles about "the declining production of natural citric acid and proliferation of manufactured acid in food products [to] bolster her allegation that manufactured citric acid is in the [p]roduct").

**(5) Second Circuit case law regarding other similar ingredients**

In cases with other ingredients that can be both naturally and artificially derived, courts in this Circuit have also found that generalized allegations alone are insufficient to state a plausible claim. *See Fogelson*, 2026 WL 2149968, at *3 (holding that "merely outlining the biochemical and regulatory definitions of [malic acid] is insufficient" to plausibly allege that the defendant's product contains the synthetic version of an ingredient); *Van Wagner*, 2026 WL 621830, at *6 (finding that the plaintiff had not plausibly alleged that the xanthan gum in the product was synthetic because the "[p]laintiff concedes 'that xanthan gum could also be produced naturally'" without proving that the defendant's product specifically uses the synthetic version of the ingredient); *Hawkins*, 654 F. Supp. 3d at 305–06 (holding that "the [c]omplaint's allegations that the [p]roduct contains artificial flavors are conclusory statements" because the plaintiff does not provide "any additional factual support from product testing"); *Turnipseed v. Simply Orange Juice Co.*, No. 20-CV-8677, 2022 WL 657413, at *4 (S.D.N.Y. Mar. 4, 2022) (finding that the "[p]laintiff has failed to sufficiently allege that [the d]efendant misrepresented that its [p]roduct contains no artificial flavors" because "she fails to provide any details whatsoever about what [her] laboratory test entailed"); *Wynn*, 2021 WL 168541, at *6 (holding that plaintiffs had not plausibly alleged that the product contains artificial flavoring because "the complaint does not include [factually substantiated] allegations that the added non-vanilla flavors in [d]efendant's product are artificially derived"); *cf. Goetz*, 768 F. Supp. 3d at 656 n.3 (finding that the plaintiffs adequately alleged that the defendants' products contained artificial "vitamins and minerals" because "at least some of the ingredients in [the d]efendants' products are named in their synthetic forms" and therefore "it is not too far a leap to infer that, because [the d]efendants are

willing to use synthetic forms of some vitamins and minerals, they are more likely to use the synthetic forms of others").[9]

The Court therefore finds that Plaintiff fails to plausibly allege in the Complaint that the citric acid found in Keurig's Products is synthetic and therefore inconsistent with the Products' "All Natural" representation.

### B. Plaintiff has not plausibly alleged that a reasonable consumer would be misled by the Products' labels

Keurig argues that Plaintiff has failed to plausibly allege that a reasonable consumer would view the citric acid in the Products as unnatural. (Def.'s Mem. 7.) Keurig contends that a

---

[9] In her briefing, Plaintiff cites only five Second Circuit cases and twelve out-of-circuit cases, the latter of which are not helpful to the Court's analysis because they either interpret other state's laws or discuss New York GBL law in conjunction with and indistinguishable from other laws. *See Albrigo v. Chobani, LLC*, No. 24-CV-1418, 2025 WL 1930007, at *7 (S.D. Cal. July 11, 2025) (interpreting California's consumer protection statutes); *Taylor v. Walmart, Inc.*, 789 F. Supp. 3d 774, 785 (C.D. Cal. 2025) (same); *Ringler v. J.M. Smucker Co.*, 783 F. Supp. 3d 1229, 1239 (C.D. Cal. 2025) (same); *Carbine v. Target Corp.*, No. 24-CV-3721, 2025 WL 501829, at *3–4 (C.D. Cal. Feb. 13, 2025) (same); *Slowinski v. Drip Drop Hydration, Inc.*, No. 24-CV-5421, 2025 WL 524118, at *4 (N.D. Ill. Feb. 18, 2025) (interpreting Illinois Consumer Fraud and Deceptive Business Practices Act); *Hayes v. Kraft Heinz Co.*, No. 23-CV-16596, 2024 WL 4766319, at *3 (N.D. Ill. Nov. 13, 2024) (conducting a combined analysis of the claims under Illinois, California and New York consumer protection laws); *Squeo v. Campbell Soup Co.*, No. 24-CV-2235, 2024 WL 4557680, at *4 (N.D. Cal. Oct. 22, 2024) (conducting a combined analysis of the claims under California and New York consumer protection laws, which the parties did not dispute); *Fried v. Snapple Beverage Corp.*, 753 F. Supp. 3d 1145, 1152 (S.D. Cal. 2024) (interpreting California's consumer protection statutes); *Pelayo v. Conagra Brands, Inc.*, No. 23-CV-5833, 2024 WL 3544621, at *1 (N.D. Cal. May 2, 2024) (unclear what state law the court is interpreting); *Zaback v. Kellogg Sales Co.*, No. 32-CV-268, 2020 WL 6381987, at *4 (S.D. Cal. Oct. 29, 2020) (interpreting California law); *Noohi v. Kraft Heinz Co.*, No. 19-CV-10658, 2020 WL 5554255, at *3 (C.D. Cal. July 20, 2020) (conducting a combined analysis of the claims under California, New York, Texas, and Georgia consumer protection laws); *Figy v. Frito-Lay N. Am., Inc.*, 67 F. Supp. 3d 1075, 1090 (N.D. Cal. 2014) (interpreting California law); *see also supra* footnote 8 discussing the three cases cited by Plaintiff in her letter of supplemental authority. Keurig likewise cites three out-of-state cases that are not helpful to the court's analysis. *See Pelayo*, 2024 WL 3544621, at *1; *Zaback*, 2020 WL 6381987, at *4; *Figy*, 67 F. Supp. 3d at 1090;. To the extent these cases "analyze inapplicable consumer protection laws . . . the [c]ourt takes notice that these cases do exist . . . [but] will [] rely upon an established and consistent body of case law in the Second Circuit applicable to this case." *Hawkins v. Coca-Cola Co.*, 654 F. Supp. 3d 290, 303 n.2 (S.D.N.Y. 2023).

recent decision in the Southern District of New York is "dispositive" because "the court [] held that the phrase 'All Natural' on Snapple beverage products would not mislead a reasonable consumer as a matter of law." (*Id.* at 9 (quoting *Valencia*, 2024 WL 1158476, at *6 (holding that "[a] reasonable consumer would not think that a compound found in nature is artificial even if it is produced in a different way than nature produces it")).) Second, Keurig argues that "the mere fact that [citric acid] is produced through industrial or synthetic processes does not render it artificial in the eyes of a reasonable consumer," and that courts have "repeatedly recognized [that] virtually all processed foods are manufactured using industrial methods, yet this this does not make their ingredients artificial or their labeling deceptive." (*Id.* at 11.) Lastly, Keurig argues that the "two decades-old FDA warning letters" that Plaintiff uses to support her argument "do not establish what is deceptive to a reasonable consumer or reflect a definitive agency position." (*Id.* at 11–12.)

Plaintiff argues first, that "[w]hether a reasonable consumer would be deceived is generally a question of fact that cannot be determined at the pleadings stage." (Pl.'s Opp'n 8.) Second, Plaintiff argues that she "adequately alleges that a reasonable consumer would be deceived by [Keurig]'s 'ALL NATURAL' representation because she points out material differences between natural and synthetic citric acid." (*Id.*) In support, Plaintiff alleges that one difference is the use of industrial synthetic chemicals, like "n-octyl alcohol, isoparaffinic petroleum hydrocarbons, calcium hydroxide and sulfuric acid," to manufacture synthetic citric acid. (*Id.* at 10 (citing Compl. ¶16 ).) Plaintiff contends that her allegations in the Complaint that "industrial synthetic chemicals 'remain in synthetic citric acid' and thus in finished foods like the Products" "is not mere conjecture" as "FDA regulations expressly refer to residues of n-octyl alcohol and synthetic isoparaffinic petroleum hydrocarbons that remain in the finished synthetic citric acid." (*Id.*) Plaintiff also alleges that another difference is the adverse health

effects associated with synthetic citric acid such as "inflammation related to asthma, juvenile idiopathic arthritis, autistic spectrum disorder and fibromyalgia." (*Id.* (citing Compl. ¶ 18).) Third, Plaintiff contends that *Valencia* is not "dispositive" as there are "critical differences in what was pleaded in [] *Valencia* and what Plaintiff alleges here." (*Id.*)

"New York courts apply an objective standard when assessing if an act was deceptive or misleading which focuses on whether the representation or omission is 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'" *Superb Motors Inc. v. Deo*, 776 F. Supp. 3d 21, 106 (E.D.N.Y. 2025) (quoting *Paradowski v. Champion Petfoods USA, Inc.*, No. 22- -962, 2023 WL 3829559, at *2 (2d. Cir. June 6, 2023) (summary order)), *adhered to in part on reconsideration*, No. 23-CV-6188, 2025 WL 2178194 (E.D.N.Y. Aug. 1, 2025), *motion to certify appeal denied*, 2026 WL 130912 (E.D.N.Y. Jan. 19, 2026); *Velez v. Lasko Prods., LLC*, 706 F. Supp. 3d 444, 453 (S.D.N.Y. 2023) (quoting *Dwyer v. Allbirds, Inc.*, 598 F. Supp. 3d 137, 149 (S.D.N.Y. 2022)) (same); *Sarr v. BEF Foods, Inc.*, No. 18-CV-6409, 2020 WL 729883, at *3 (E.D.N.Y. Feb. 13, 2020) ("To be 'misleading' under § 349 or § 350, the defendant's conduct must have been 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'"). "To survive a motion to dismiss, a plaintiff must do more than plausibly allege that a label might conceivably be misunderstood by some few consumers." *Dwyer*, 598 F. Supp. 3d at 149 (internal quotation marks omitted); *see also Jessani v. Monini N. Am., Inc.*, 744 F. App'x 18, 19 (2d Cir. 2018) ("Accordingly, plaintiffs must do more than plausibly allege that a 'label might conceivably be misunderstood by some few consumers.'"). Instead, "a plaintiff must plausibly allege that a significant portion of the general consuming public or of targeted customers, acting reasonably in the circumstances, could be misled." *Dwyer*, 598 F. Supp. 3d at 149; *see also Beers v. Mars Wrigley Confectionery US, LLC,* No. 21-CV-2, 2022 WL 493555, at *3 (S.D.N.Y. Feb. 17, 2022) (same); *Melendez v. ONE Brands, LLC*,

No. 18-CV-6650, 2020 WL 1283793, at *6 (E.D.N.Y. Mar. 16, 2020) ("To survive a motion to dismiss under []GBL §§ 349 or 350, a plaintiff must allege statements that were 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'" (citing *Davis v. Hain Celestial Grp., Inc.*, 297 F. Supp. 3d 327, 334 (E.D.N.Y. 2018))). "While the question of whether a reasonable consumer would be deceived by a 'natural' label is not typically resolved at the motion to dismiss stage, dismissal is appropriate when the complaint fails to allege facts that state a plausible claim for relief." *Axon I*, 354 F. Supp. 3d at 183; *see also Wynn*, 2021 WL 168541, at *2 ("Although the question of whether a business practice or advertisement is misleading to the reasonable consumer is generally a question of fact, it is well settled that a court may determine as a matter of law that an allegedly deceptive [practice] would not have misled a reasonable consumer." (internal quotation marks omitted)); *Rodriguez v. Cheesecake Factory Inc.*, No. 16-CV-2006, 2017 WL 6541439, at *5 (E.D.N.Y. Aug. 11, 2017) ("[C]ourts regularly determine, as a matter of law, that a defendant's conduct would not have misled a reasonable consumer.").

As explained by courts in the Second Circuit, whether a product is likely to mislead a reasonable consumer under GBL §§ 349 and 350 is not determined by the FDA's views or regulations alone. *See Valencia*, 2024 WL 1158476, at * 3 ("[A]s several courts in this Circuit have explained, the FDA's regulations or views are irrelevant or at least not dispositive when it comes to determining whether a reasonable consumer would be deceived or mislead under GBL §§ 349-50."); *Fuller v. Stop & Shop Supermarket Co. LLC*, No. 22-CV-9824, 2023 WL 8005319, at *5 n.5 (S.D.N.Y. Nov. 17, 2023) ("[The p]laintiff's suggestion that the [p]roduct runs afoul of an unspecified FDA suggestion is 'not relevant to determining whether a label is deceptive or misleading under GBL §§ 349-350' because '[t]here is no private right of action for breaches of FDA provisions, and violations of federal standards do not automatically translate

into an actionable claim under GBL §§ 349-350.'" (third alteration in original) (quoting *Pichardo v. Only What You Need, Inc.*, No. 20-CV-493, 2020 WL 6323775, at *3 n.6 (S.D.N.Y. Oct. 27, 2020))); *Henry v. Campbell Soup Co.*, No. 22-CV-431, 2023 WL 2734778, at *7 (E.D.N.Y. Mar. 31, 2023) ("FDA regulations are 'without consequence' when stating a claim under New York law and are not probative of liability." (citing *Warren v. Whole Foods Market Group Inc.*, 574 F. Supp. 3d 102, 113 (E.D.N.Y. 2021))); *Warren*, 574 F. Supp. 3d at 113 ("Because of [the distinct standards under FDA regulations and New York law for determining whether a product label is false or misleading], courts have concluded that FDA guidance is 'without consequence' when stating a claim under New York law." (quoting *Steele v. Wegmans Food Mkts., Inc.*, 472 F. Supp. 3d 47, 49 (S.D.N.Y. 2020))); *see also Zinger v. Bai Brands, LLC*, No. 24-CV-3993, 2026 WL 849760, at *2 (S.D.N.Y. Mar. 27, 2026) (holding that the defendant's non-binding FDA guidance did "not weigh upon whether a reasonable consumer would find [the substance] to be artificial"), *appeal docketed*, No. 26-938 (2d Cir. Apr. 13, 2026); *Karabas*, 770 F. Supp. 3d at 468 n.5 (holding that the complaint's citations to "the USDA's definition of synthetic ingredients, the FDA's policy on the use of the term 'natural,' and the Organic Foods Production Act's ('OFDA') definition of 'synthetic' . . . are not relevant in determining whether the '100% Natural' label would mislead a reasonable consumer acting reasonably"). "'[T]he operative question is whether the plaintiff has stated plausibly that the label is likely to be misleading to a reasonable consumer acting reasonably,' and what the FDA might determine as a matter of science does not necessarily even influence, let alone equate to or determine, a reasonable consumer's understanding." *Valencia*, 2024 WL 1158476, at *4 (citing *Mason v. Reed's Inc.*, 515 F. Supp. 3d 135, 143 (S.D.N.Y. 2021)); *see also Silva v. Hornell Brewing Co.*, No. 20-CV-756, 2020 WL 4586394, at *2 (E.D.N.Y. Aug. 10, 2020) (collecting cases) ("[T]his case requires a determination of whether labeling the [p]roduct as 'all natural' is

misleading to a reasonable consumer. That type of legal question is within the conventional experience of the court and does not require FDA guidance.”).

Moreover, the FDA has clearly stated that its policy for using the term “natural” when labeling human food products “was not intended to address food production methods . . . .” *Use of the Term “Natural” in the Labeling of Human Food Products*, 80 Fed. Reg. 69905, 69906 (proposed Nov. 12, 2015) (to be codified at 21 C.F.R. pt. 101); *Parks v. Ainsworth Pet Nutrition, LLC*, 377 F. Supp. 3d 241, 247 (S.D.N.Y. 2019) (“The FDA also stated that when it established that policy, ‘it was not intended to address food production methods . . . .’”). Courts have determined that “[a] reasonable consumer would not think that a compound found in nature is artificial even if it is produced in a different way than nature produces it, if the way it is produced is that it is derived from a natural product and does not contain anything synthetic.” *Karabas*, 770 F. Supp. 3d at 467 (quoting *Valencia*, 2024 WL 1158476, at *6 (dismissing GBL claims and noting that the plaintiff “alleges that the fermenting process produces a broth containing citric acid and that the broth must be recovered through chemical reactions with synthetic agents, but does not allege that the resulting citric acid contains synthetic agents” (internal citation omitted))); *see also Bustamante*, 100 F.4th at 432 n.8 (holding that “definitions and deposition testimony, along with the scientific literature and existing consumer surveys in the record[,]” did not “establish that a reasonable consumer would interpret ‘All Natural’ as meaning ‘containing no artificial or synthetic ingredients’”).

Further, “a reasonable consumer would not be so absolutist as to require that ‘natural’ means there is no [synthetic ingredients], even an accidental and innocuous amount, in the [p]roducts.” *Parks*, 377 F. Supp. 3d at 247; *see Karabas*, 770 F. Supp. 3d at 467 (“No reasonable consumer would conclude that a product contains artificial ingredients merely because it is produced ‘in industrial factories’ using ‘synthetic processes’ [because] that is the

way most consumer goods are produced."); *see also Axon I*, 354 F. Supp. 3d at 183 ("Given the widespread use of herbicides, the court finds it 'implausible that a reasonable consumer would believe that a product labeled ['Florida's Natural'] could not contain a trace amount of [a synthetic ingredient] that is far below the amount deemed tolerable by the FDA."). Instead, courts have determined that describing a product as "all-natural" is more likely to mislead a reasonable consumer where the alleged deception turns on the defendant's introduction of unnatural ingredients to the product, rather than when the product contains only trace amounts of a commonly used synthetic ingredient introduced during production. *See Axon I*, 354 F. Supp. 3d at 183 ("It is far more misleading to call a product 'natural' when the defendant has introduced unnatural ingredients than it is to call a product 'natural' when it contains trace amounts of a commonly used pesticide introduced early in the production process."); *see also Van Wagner*, 2026 WL 621830, at *6 n.5 (holding "the [c]omplaint's suggestion of how a reasonable consumer would understand 'natural' — i.e., 'free from synthetic ingredients,' rather than free of any 'manufacturing' processes — is more plausible" (internal citations omitted)).

Plaintiff argues that "the holding in *Valenica* is [] not applicable here." (Pl.'s Opp'n 10–11.) In support, Plaintiff argues "[t]he claims in *Valencia* failed because the [p]laintiff failed to describe any way in which synthetic citric acid differs from the naturally occurring variety," whereas the Complaint "expressly alleges that the industrial synthetic chemicals used to make synthetic citric acid remain in the final chemical and thus the finished products, . . . [a]nd as a result, consumption of synthetic citric acid has been associated with adverse health effects." (*Id.* at 10–11 (citing Compl. ¶16; *Valencia*, 2024 WL 1158476, at *6).) Plaintiff contends that "[c]ourts have recognized that these differences between natural and synthetic acid are meaningful and have accordingly distinguished *Valencia*." (*Id.* at 11.) In response, Keurig argues that *Valencia* is "squarely on point" because "[b]oth cases involve the same products,

nearly identical allegations regarding the source and nature of the citric acid, and the same legal question." (Def.'s Reply 7 (citing Pl.'s Opp'n 11).)

While the court in *Valencia* addressed the same claims against Keurig for the same Products and found that the GBL claims must be dismissed, Plaintiff's allegations differ from those in *Valencia*. *See Valencia*, 2024 WL 1158476, at *1 ("[The defendant] sells fruit beverages . . . with the statement 'All Natural' displayed on the front of the bottles . . . [and the p]laintiff alleges that the statement 'All Natural' on the [p]roducts' front labels is false and misleading because the [p]roducts contain . . . citric acid."); *id.* at *6 ("[The p]laintiff has not adequately alleged that the [p]roducts' 'All Natural' label is misleading because the [p]roducts contain citric acid. Accordingly, [the p]laintiff's GBL claims must be dismissed."). Plaintiff spends most of her discussion distinguishing *Valencia* and citing cases where "[c]ourts have recognized that these differences between natural and synthetic citric acid are meaningful and have accordingly distinguished *Valencia*." (Pl.'s Opp'n 11.) However, other than citing cases for their general holdings that a plaintiff sufficiently alleged that a reasonable consumer would be misled, Plaintiff has failed to explain why the allegations in the Complaint are sufficient or otherwise counter the extensive case law published since *Valencia*. As described below, the Complaint's allegations that trace synthetic chemicals remain in the Products, which result in adverse health effects, do not plausibly allege that a reasonable consumer would find the Products' "All-Natural" label to be misleading despite Keurig's use of citric acid.

Plaintiff fails to plausibly allege that citric acid, a naturally occurring ingredient which is processed and could retain trace amounts of synthetic materials, would mislead a reasonable consumer.[10] (*See* Compl. ¶ 16.) Plaintiff cites to non-binding FDA warning letters in an attempt

[10] Plaintiff incorrectly argues that a determination of what a reasonable consumer would believe is inappropriate at the motion to dismiss stage. (*See* Pl.'s Opp'n 1–2.) Courts frequently

to bolster her claim, but the FDA's guidance is irrelevant to the reasonable consumer analysis. (*See id.* ¶17; Pl.'s Opp'n 5–6.) *See Silva*, 2020 WL 4586394, at *2 ("Any guidance the FDA ultimately issues about the term 'natural' will not be inconsistent with the outcome the court reaches in this case because the FDA is not tasked with applying a reasonable consumer standard."); *see also In re Frito-Lay N. Am., Inc. All Nat. Litig.*, 2013 WL 4647512, at *10 ("[The defendant] asks the [c]ourt to give preemptive effect to the FDA's non-binding guidance on the meaning of the term 'natural.' In turn, it argues, that plaintiffs' state-law claims stand as an obstacle to the enforcement of the non-binding guidance. But such non-binding guidance is not entitled to preemptive effect."). Absent any allegations by Plaintiff as to how the FDA's

---

analyze at the motion to dismiss stage whether a complaint plausibly alleges that a reasonable consumer would be deceived. *See*, *e.g.*, *Santiful v. Wegmans Food Markets, Inc.* (*Santiful I*), No. 20-CV-2933, 2022 WL 268955, at *5 (S.D.N.Y. Jan. 28, 2022) (dismissing the plaintiff's claims under GBL §§ 349 and 350 and concluding "that the [p]roduct's labeling would not mislead a reasonable consumer"); *Twohig v. Shop-Rite Supermarkets, Inc.*, 519 F. Supp. 3d 154 (S.D.N.Y. 2021) (same); *Barreto v. Westbrae Nat., Inc.*, 518 F. Supp. 3d 795, 806 (S.D.N.Y. 2021) ("Because the [c]ourt concludes that the product's labeling would not mislead a reasonable consumer, it will dismiss [the plaintiff's] claims under sections 349 and 350 of the GBL."); *Kennedy v. Mondelez Glob. LLC*, No. 19-CV-302, 2020 WL 4006197, at *8 (E.D.N.Y. July 10, 2020) ("The claims based on . . . [GBL] sections 349 and 350[] fail as a matter of law because no representation identified would deceive a reasonable consumer."); *Bowring v. Sapporo U.S.A., Inc.*, 234 F. Supp. 3d 386, 392 (E.D.N.Y. 2017) ("Because the [c]ourt finds that the [d]efendant's conduct would not mislead a reasonable consumer, the [c]ourt grant's [d]efendant's motion to dismiss [the p]laintiff's claims brought under [GBL]. §§ 349 and 350."); *see also Wynn v. Topco Assocs., LLC*, No. 19-CV-11104, 2021 WL 168541, at *2 (S.D.N.Y. Jan. 19, 2021) ("Although the question of whether a business practice or advertisement is misleading to the reasonable consumer is generally a question of fact, it is well settled that a court may determine as a matter of law that an allegedly deceptive [practice] would not have misled a reasonable consumer." (internal quotation marks omitted)); *Axon v. Citrus World, Inc.* (*Axon I*), 354 F. Supp. 3d 170, 183 (E.D.N.Y. 2018) ("While the question of whether a reasonable consumer would be deceived by a 'natural' label is not typically resolved at the motion to dismiss stage, dismissal is appropriate when the complaint fails to allege facts that state a plausible claim for relief."), *aff'd sub nom. Axon II*, 813 F. App'x 701; *Rodriguez v. Cheesecake Factory Inc.*, No. 16-CV-2006, 2017 WL 6541439, at *5 (E.D.N.Y. Aug. 11, 2017) (noting that "courts regularly determine, as a matter of law, that a defendant's conduct would not have misled a reasonable consumer" and this inquiry "may happen at the motion to dismiss stage, before any discovery is conducted"). The Court therefore analyzes the sufficiency of the pleadings on this issue.

opinions influence what a reasonable consumer believes, the FDA warning letters that Plaintiff references do not support her claim. *See Warren*, 574 F. Supp. 3d at 113 ("[T]he '[c]omplaint does not allege that reasonable consumers are aware of [the FDA's] complex regulations, much less that they incorporate the regulations into their day-to-day marketplace expectations.'" (quoting *Dashnau v. Unilever Mfg. (US), Inc.*, 529 F. Supp. 3d 235, 242–43 (S.D.N.Y. 2021))). Plaintiff must plead that Keurig's Products' packaging "is likely misleading on its own, in context, to a reasonable consumer" without relying on FDA guidance. *Id.* at 113–14.

Moreover, Plaintiff relies on allegations that Keurig's production process uses industrial synthetic chemicals which remain in the finished Products — but these trace chemicals do not transform the citric acid into a synthetic ingredient, and Plaintiff has failed to plausibly allege that a reasonable consumer would interpret "ALL NATURAL" as being a product that is free from trace amounts of synthetic chemicals. (*See* Pl.'s Opp'n 9–10; Def.'s Reply 5–6.) Plaintiff's allegations that Keurig's Products contain "trace synthetic chemicals" do not establish that the ingredients, specifically the citric acid, within the Products are not "ALL NATURAL"; the alleged trace synthetic chemicals are not ingredients but rather substances potentially introduced through the production process. (*See* Compl. ¶16.) *See Axon I*, 354 F. Supp. 3d at 183–84 (finding that "a reasonable consumer would not be misled by defendant's product labels and that dismissal of plaintiff's NYGBL claims is [] appropriate [,]" because "[g]lyphosate [a synthetic chemical,] is not an 'ingredient' added to defendant's products; rather, it is a substance introduced through the [production] process"); *Parks* 377 F. Supp. 3d at 247 (dismissing the plaintiff's GBL claims because "[the plaintiff] asserts that the [p]roducts contain trace amounts of [a synthetic substance], but not that the [p]roducts are composed of unnatural ingredients"); *see also Karabas*, 770 F. Supp. 3d at 466–68 (dismissing the plaintiff's claim and holding that the allegations about the ingredients, stevia leaf extract and erythritol, which are themselves

natural but "the processes used to produce these ingredients do not occur naturally in nature" and "are synthetic processes undertaken in industrial factories[,]" did not sufficiently establish that a reasonable consumer would be mislead by a misrepresentation that the product was "100% Natural"). Plaintiff does not allege that there are any added synthetic substances in the Product, but rather that there are trace synthetic chemicals in the Product introduced during the manufacturing process of the citric acid. (*See* Compl. ¶ 16.) Courts have found that a reasonable consumer would expect there to be some incidental chemicals or substances that may enter a product, like Keurig's Products, during the manufacturing process and that a reasonable consumer would not therefore deem the ultimate product to be artificial. *See Valencia*, 2024 WL 1158476, at *6 ("A reasonable consumer would not think that a compound found in nature is artificial even if it is produced in a different way than nature produces it, if the way it is produced is that it is derived from a natural product and does not contain anything synthetic."); *Parks* 377 F. Supp. 3d at 247 ("But a reasonable consumer would not be so absolutist as to require that 'natural' means there is no [synthetic substance], even an accidental and innocuous amount, in the [p]roducts.").[11]

[11] Plaintiff alleges in the Complaint that "[c]onsumption of synthetic citric acid has been associated with adverse health effects including inflammation related to asthma, juvenile idiopathic arthritis, autistic spectrum disorder and fibromyalgia." (Compl. ¶ 18.) While this differentiates the Complaint from *Valencia*, Plaintiff fails to otherwise plausibly allege that a reasonable consumer would find the Products' label misleading when a natural ingredient, citric acid, undergoes the manufacturing process, and that the Products contain synthetic citric acid, *see supra* section II.b.i.2.A. *See Franklin v. Gen. Mills, Inc.*, No. 21-CV-1781, 2025 WL 2614970, at *1, 9 (E.D.N.Y. Sep. 10, 2025) (holding that the plaintiff's GBL claims were dismissed even though the product contained a harmful substance known as "phthalates" which are "linked to multiple adverse health effects" because "a reasonable consumer viewing the [p]roducts' claims . . . would not make assumptions regarding the presence or absence of phthalates"); *Dalewitz v. Procter & Gamble Co.*, No. 22-CV-7323, 2023 WL 6215329, at *3 (S.D.N.Y. Sep. 22, 2023) (dismissing the plaintiff's claim even though "the [c]ourt [took]

Plaintiff therefore has not met her burden of establishing that a reasonable consumer would be misled by Keurig's Products.

**ii. Plaintiff has not pleaded a breach of warranty claim**

Keurig argues first, that "Plaintiff's breach of express warranty claim, based on the same theory of deception as her New York GBL claims, fails for the same reasons [as her GBL claims]." (Def.'s Mem. 12 (citing Compl. ¶¶ 49–55).) In support, Keurig contends that Plaintiff's opposition "does not dispute the well-established point of law that if she fails to plead a plausible theory of deception under GBL, her breach of warranty claim must also fail," which "alone warrants dismissal of the breach of warranty claim." (Def.'s Reply 8.) Second, Keurig argues that "Plaintiff's breach of express warranty claim also fails for the independent reason that she failed to properly plead pre-suit notice to [Keurig]," because "[she] did not specify the date Keurig was sent the pre-suit notice letter, nor the date she determined the Products' label was misleading" as required under New York law. (Def.'s Mem. at 12–13.) Keurig contends that "Plaintiff simply pleads that notice was given 'prior to filing the initial complaint' and 'complied in all respects with U.C.C. §§ 2-313 and 2-607'[, b]ut without those dates, there can be no determination that [Keurig] was 'notified within a reasonable time.'" (*Id.* at 13 (first quoting Compl. ¶ 55; and then quoting *Grossman*, 516 F. Supp. 3d at 283).) Lastly, Keurig contends that the case law Plaintiff relies on to argue that "the Court should disregard [Keurig]'s

judicial notice of the well-pled correlation between [a group of synthetic chemicals known as PFAs] and adverse health effects" because "[the p]laintiff's allegations otherwise layer inference upon inference" and fail to plausibly allege that the defendant's products specifically contain PFAs). The Court acknowledges Plaintiff's allegation connecting the use of synthetic citric acid to various adverse health issues, but it does not change the Court's conclusion given Plaintiff's failure to sufficiently allege both that the Products contained synthetic citric acid and that a reasonable consumer would be misled.

breach of warranty arguments" because Keurig's pre-motion letter did not include the breach of warranty argument, is distinguishable as there was no "order [that was] issued by the Court here, nor was a pre-motion conference held." (Def.'s Reply 8 (first citing Pl.'s Opp'n 12; and then citing *Montero v. Dorce*, No. 23-CV-7073, 2024 WL 94434, at *1 (E.D.N.Y. Jan. 9, 2024)).) Moreover, Keurig argues that "as a general rule, 'a pre-motion conference letter' does not constitute 'a "motion" under Rule 12 such that a failure to raise a defense in such a letter results in a waiver of that defense," and therefore Keurig has not waived its breach of warranty arguments. (*Id.* (quoting *Schweitzer ex rel. Schweitzer v. Crofton*, No. 08-CV-135, 2010 WL 3516161, at *7 (E.D.N.Y. Sep. 1, 2010), *aff'd*, 560 F. App'x 6 (2d Cir. 2014)).)

First, Plaintiff argues that "[Keurig]'s arguments [ ] fail[] on the merits." (Pl.'s Opp'n 12.) Plaintiff argues it was sufficient for her to satisfy the pleading requirement "by alleging that '[p]rior to filing the initial Complaint in this action, [Keurig] [was] served via certified mail with a pre-suit notice letter on behalf of Plaintiff that complied in all respects with U.C.C. §§ 2-313 and 2-607.'" (*Id.* (first alteration in original) (quoting Compl. ¶55).) Plaintiff contends that because "she provides method of notice" and "the Complaint permits a reasonable inference for when she discovered the misrepresentation and sent the letter to [Keurig]," she has satisfied the pleading requirement. (*Id.*) Second, Plaintiff argues that because "[Keurig]'s pre-motion letter made no mention of the pre-suit notice issue" that "[Keurig]waived the right to raise it in this motion" under Rule 12 of the Federal Rules of Civil Procedure.[12] (*Id.* (first citing Def.'s Ltr. Mot. for a Pre-Mot. Conf., Docket Entry No. 8; and then citing *Montero*, 2024 WL 94434, at *1).)

[12] Plaintiff incorrectly argues that Keurig waived its argument about pre-suit notice by not raising it in its pre-motion conference letter. *See Freudenberg v. Cnty. of Orange*, No. 23-CV-847, 2024 WL 4307176, at *12 (S.D.N.Y. Sep. 25, 2024) ("'[A] pre-motion conference letter' does not constitute 'a "motion" under Rule 12 such that a failure to raise a defense in such a letter results in a waiver of that defense.'" (alteration in original) (quoting *Feldman v. Comp Trading, LLC*, No. 19-CV-4452, 2021 WL 930222, at *3 (E.D.N.Y. Mar. 11, 2021))); *see also*

Under New York law, to state a claim of breach of express warranty, "a plaintiff must [allege] 'an affirmation of fact or promise by the seller, the natural tendency of which was to induce the buyer to purchase' and that the warranty was relied upon." *Factory Assocs. & Exps., Inc. v. Lehigh Safety Shoes Co.*, 382 F. App'x 110, 111–12 (2d Cir. 2010) (quoting *Schimmenti v. Ply Gem Indus., Inc.*, 549 N.Y.S.2d 152, 154 (App. Div. 1989)); *see Goetz*, 768 F. Supp. 3d at 658 (quoting *id.*); *see also Lancaster v. Am. Textile Co.*, 719 F. Supp. 3d 204, 222 (N.D.N.Y. 2024) ("To state a claim for breach of an express warranty under New York law, the plaintiff must plead '(1) the existence of a material statement amounting to a warranty, (2) the buyer's reliance on this warranty as a basis for the contract with the immediate seller, (3) breach of the warranty, and (4) injury to the buyer caused by the breach.'" (quoting *Klausner v. Annie's, Inc.*, 581 F. Supp. 3d 583, 550 (S.D.N.Y. 2022))); *Velez*, 706 F. Supp. 3d at 457 (quoting *Goldemberg v. Johnson & Johnson Consumer Cos.*, 8 F. Supp. 3d 467, 482 (S.D.N.Y. 2014)) (same); *Vuksanovich v. Airbus Ams., Inc.*, 608 F. Supp. 3d 92, 116 (S.D.N.Y. 2022) ("A successful claim of a breach of express warranty requires proof that an express warranty existed, was breached, and that plaintiff had relied on that warranty." (quoting *Reed v. Pfizer, Inc.*, 839 F. Supp. 2d 571, 578 (E.D.N.Y. 2012))); *Reynolds-Sitzer v. EISAI, Inc.*, 586 F. Supp. 3d 123, 134 (N.D.N.Y. 2022) (same). In addition, a plaintiff cannot recover under a breach of express warranty claim unless the product is defective. *See Dixon v. Ford Motor Co.*, No. 14-CV-6135, 2015 WL 6437612, at *3 (E.D.N.Y. Sep. 30, 2015) ("[A] successful breach of warranty claim requires that

---

*BOKF, N.A. v. Caesars Ent. Corp.*, No. 15-CV-1561, 2015 WL 13649803, at *1 (S.D.N.Y. June 19, 2015) ("[P]re-motion conferences are useful tools to narrow the issues and to determine the appropriate time for the motion, and in those instances where it appears clear from the record that a motion is without merit, to attempt to persuade parties not to make the motion."); *JP Morgan Chase Bank, N.A. v. L. Off. of Robert Jay Gumenick, P.C.*, No. 08-CV-2154, 2011 WL 1796298, *3 (S.D.N.Y. Apr. 22, 2011) ("[T]he text of Rule 12(h)(1) provides, and the related commentary in Wright & Miller confirms, that the enumerated Rule 12(b) defenses are not waived until a defendant files either a responsive pleading or a defensive motion.").

the product be defective."). Moreover, "[i]n order to asse[r]t a breach of express or implied warranty under New York law, 'a buyer must provide the seller with timely notice of the alleged breach of warranty.'" *MacNaughton v. Young Living Essential Oils, LC*, 67 F.4th 89, 100 (2d Cir. 2023) (alterations in original); *see Ricardo Moncada v. Nuna Baby Essentials, Inc.*, 831 F. Supp. 3d 268, 283 (S.D.N.Y. 2026) (quoting *id.*); *Kandel v. Dr. Dennis Gross Skincare, LLC*, 721 F. Supp. 3d 291, 305 (S.D.N.Y. 2024) (quoting *Lugones v. Pete & Gerry's Organic, LLC*, 440 F. Supp. 3d 226, 244 (S.D.N.Y. 2020)) (same); *see also* N.Y. U.C.C. § 2-607(3)(a) ("[T]he buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy.").

**1. Lack of pre-suit notice**

First, Plaintiff has failed to allege that she provided the requisite notice to support her breach of warranty claim. While Plaintiff alleges that she satisfied the pleading requirement because she provided a method of notice and because "the Complaint permits a reasonable inference for when she discovered the misrepresentation," this is insufficient as Plaintiff did not provide the exact date of pre-suit notice in the Complaint. (Pl.'s Opp'n 12.) *See Grossman*, 516 F. Supp. 3d at 283 ("[The] plaintiff must provide factual allegations — such as the date and method plaintiff sent a pre-suit notice — supporting the contention that she notified defendant of the alleged breach within a reasonable time."); *Petrosino v. Stearn's Prods., Inc.*, No. 16-CV-7735, 2018 WL 1614349, at *8 (S.D.N.Y. Mar. 30, 2018) ("Proper factual allegations should, at least, include the date and method by which [the] [p]laintiff afforded such notice to [the] [d]efendant."); *In re Frito-Lay N. Am., Inc. All Nat. Litig.*, 2013 WL 4647512, at *27 (dismissing the plaintiffs' breach of warranty claim because the plaintiffs "fail[ed] to allege in the [f]irst [a]mended [c]omplaint that they even provided sufficient notice to [the] defendants of their express warranty claims under Florida and New York law, let alone notice within a reasonable

time after discovery of a breach"). Plaintiff's filing of the Complaint does not serve as adequate notice to Keurig for their breach of warranty claim. *See Stern v. Electrolux Home Prods., Inc.*, No. 22-CV-3679, 2024 WL 416495, at *10 (E.D.N.Y. Jan. 30, 2024) ("Moreover, the weight of the recent authority has rejected the proposition that the filing of the [c]omplaint can serve as adequate notice in a breach of warranty case."), *report and recommendation adopted*, 2024 WL 4297656 (E.D.N.Y. Sep. 26, 2024); *Miramontes v. Ralph Lauren Corp.*, No. 22-CV-4192, 2023 WL 3293424, at *9 (S.D.N.Y. May 5, 2023) (collecting cases) ("[A] number of my colleagues have held that neither a complaint itself, nor a complaint alleging the plaintiff 'provided or will provide notice' is sufficient to satisfy the pre-suit notice requirement."); *Barton v. Pret A Manger (USA) Ltd.*, 535 F. Supp. 3d 225, 246–47 (S.D.N.Y. 2021) (collecting cases) ("The weight of authority in this Circuit does not view a complaint to be by itself sufficient reasonable notice."); *see also Harvey v. WK Kellogg Co.*, No. 25-CV-3984, 2025 WL 3706665, at *5 (E.D.N.Y. Dec. 22, 2025) (holding that the plaintiff's warranty claim failed because the "complaint alleg[ations] that he notified the seller of the defective product and that defendant received sufficient and timely notice of the breaches of warranty alleged herein" were "conclusory assertions that notice was provided to [d]efendants").

**2. Failure to plead claim**

Second, for the same reasons discussed above, Plaintiff has failed to adequately state a claim of breach of warranty because she has failed to sufficiently plead that the Products' labeling was misleading and deceptive. *See supra* section II.b.i.2; *Van Wagner*, 2026 WL 621830, at *7 ("[The d]efendant argues the breach of express warranty claims fail for the same reasons as the GBL claims. The [c]ourt agrees — because [p]laintiff does not plausibly allege [d]efendants breached the label's warranty that the [p]roduct is 'natural' 'with added vitamins, minerals, and taurine,' the third element is not satisfied and the [c]omplaint does not state a claim

for breach of express warranty."); *Vazquez v. Walmart, Inc.*, 704 F. Supp. 3d 417, 428 (S.D.N.Y. 2023) ("Plaintiff fails to allege that the [products] 'do not comport with the statements on their packaging, and thus have failed to allege a breach of any warranty.'" (quoting *Cosgrove*, 520 F. Supp. 3d at 585)); *Herceg v. Chobani, LLC*, No. 22-CV-5137, 2023 WL 6162939, at *8 (S.D.N.Y. Sep. 21, 2023) (same); *Angeles v. Nestle USA, Inc.*, 632 F. Supp. 3d 309, 317 (S.D.N.Y. 2022) ("Because [the p]laintiff has failed to plausibly allege that the [p]roduct does not comport with the statements contained on the label, [the plaintiff's] claim [for breach of express warranty] fails."); *Dashnau*, 529 F. Supp. 3d at 249 ("[The p]laintiffs' claim for breach of express warranty fails because they have not adequately pled that the [p]roduct 'does not comport with the statements contained on the label.'" (quoting *Wynn*, 2021 WL 168541, at *7)); *see also Parks*, 377 F. Supp. 3d at 248 (dismissing the express breach of warranty claim "[f]or the same reasons discussed [in the GBL section], a reasonable consumer would not interpret the label 'natural' as warranting that the [p]roducts contain no amount of [a synthetic substance]"); *Axon I*, 354 F. Supp. 3d at 185 ("Because the court has concluded that a reasonable consumer would not interpret the 'Florida's Natural' brand name as warranting that the products are free from trace amounts of [a synthetic substance], plaintiff's breach of warranty claim is dismissed.").

The Court therefore dismisses Plaintiff's cause of action for breach of express warranty.

**iii. Leave to amend the Complaint**

Plaintiff requests leave to amend the Complaint. (Pl.'s Opp'n 16.) Keurig does not address whether the Court should grant Plaintiff's request. (*See generally* Def.'s Reply.)

Rule 15 of the Federal Rules of Civil Procedure provides that "[l]eave to amend should be 'freely give[n] . . . when justice so requires,' but 'should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by

amendments previously allowed, or undue prejudice to the non-moving party.'" *United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 28 (2d Cir. 2016) (second and third alterations in original) (first quoting Fed. R. Civ. P. 15(a)(2); and then quoting *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008)); *see MSP Recovery Claims, Series LLC v. Hereford Ins. Co.*, 66 F.4th 77, 90 (2d Cir. 2023) ("A court should freely give leave when justice so requires, but it may, in its discretion, deny leave to amend for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." (internal quotation marks and citations omitted)); *Dalewitz v. Procter & Gamble Co.*, No. 22-CV-7323, 2025 WL 764023, at *2 (S.D.N.Y. Mar. 11, 2025) ("[A]bsent a showing of prejudice or bad faith, practice in this Circuit is to grant a motion to amend." (citing *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993))).

Because leave to amend should be freely given under Rule 15 of the Federal Rules of Civil Procedure and no showing of prejudice or bad faith has been made, the Court grants Plaintiff the opportunity to amend the Complaint. *See Kandel*, 721 F. Supp. 3d at 309 ("Here, the possibility exists that the defects of [the plaintiff's] breach of warranty . . . claim[] can be cured."); *Wiggins v. Unilever U.S., Inc.*, 684 F. Supp. 3d 127, 155 (S.D.N.Y. 2023) (granting the plaintiffs leave to amend to replead their breach of express warranty claim and GBL claims "because th[e c]ourt] cannot find that no amendment could succeed"); *Colella v. Atkins Nutritionals, Inc.*, 348 F. Supp. 3d 120, 145 (E.D.N.Y. 2018) ("[The p]laintiff is granted leave to amend the complaint to replead his []GBL claims as specified herein."); *see also Normal v. Experian Info. Sols., Inc.*, No. 23-CV-9245, 2024 WL 3890103, at *1 (S.D.N.Y. Aug. 20, 2024) ("In this Circuit, '[i]t is the usual practice upon granting a motion to dismiss to allow leave to replead.'" (alteration in original) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991))).

## III. Conclusion

For the foregoing reasons, the Court grants Keurig's motion to dismiss and dismisses all of Plaintiff's causes of action without prejudice. The Court also grants Plaintiff leave to file an amended complaint. Any amended complaint must be filed on or before October 5, 2026.

Dated: September 4, 2026
Brooklyn, New York

SO ORDERED:

/s/MKB
MARGO K. BRODIE
United States District Judge